Ricky BROWN, et al., Plaintiffs,

v.

**CITY OF ONEONTA, NEW YORK, et al., Defendants.**

No. 93–CV–349.

United States District Court, N.D. New York.

July 18, 1994.

341

Paul C. Rapp, David Scott Bassinson, Whiteman, Osterman Law Firm, Albany, NY, for Ricky Brown, Jamel Champen, Sheryl Champen, Hopeton Gordon, Jean Cantave, Raishawn Morris, Major Barnett, Charles Battiste, Kevin Allen and Wayne Lewis.

James B. Tuttle, Dreyer, Boyajian Law Firm, Albany, NY, for City of Oneonta, NY, Police Dept. of City of Oneonta, John J. Donadio, Joseph Redmond, William J. Davis, X. Olsen, and Anonymous Officers and Investigators of Police Dept. of City of Oneonta.

Robert A. Siegfried, Asst. Atty. Gen., Albany, NY, for State of NY, State University of New York, State University of New York College at Oneonta, New York State Division of Police, H. Karl Chandler, Robert Farrand, George Clum, Kevin More, John Way, Mark Kimball, Kenneth Grant, New York State Trooper Farrago, Anonymous State Police Officials and Investigators, Suco Dept. of Public Safety, Merritt Hunt, Tim Jackson, John Edmondson, Leif Hartmark, Eric Wilson, Carl Shedlock, Anonymous Public Safety Officers and Anonymous Suco Computer Employees.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Defendants in this action moved for summary judgment and plaintiffs cross-moved for partial summary judgment. Oral argument was heard on December 13, 1994. A bench decision was rendered and a corresponding order was signed on January 31, 1994. The order dismissed the Family Educational Rights and Privacy Act (FERPA) claim against the law enforcement defendants, and dismissed the equal protection, fourth amendment and intentional infliction of emotional distress claims against all defendants. The court dismissed the conspiracy claims relating to the alleged violations of plaintiffs' equal protection and fourth amendment rights. The court also dismissed pendant state law claims involving New York Civil Rights Law and the New York Personal Privacy Protection Law.

Furthermore, the court denied the summary judgment motions presented by defendants Hartmark, Wilson and Hunt regarding the FERPA claims and disagreed with their

argument for qualified immunity. The court also denied defendants' motion to dismiss the claim pursuant to 42 U.S.C. § 1981. The court granted class certification for proposed Class I and denied class certification for proposed Class II.

Defendants now seek reconsideration of:

1.) the qualified immunity defense of defendants Wilson and Hunt in regard to the FERPA claim;

2.) the qualified immunity defense of the law enforcement defendants;

3.) the determination that the elements of a cause of action under 42 U.S.C. § 1981 are not the same as those of a fourteenth amendment claim;

4.) the court's decision not to dismiss the Title VI claims;

5.) the court's denial of summary judgment in favor of defendant Hartmark in regard to the FERPA claim.

The defendants also seek consideration of the argument that plaintiffs have no state law vehicle by which to recover for violations of state law involving investigatory stops by law enforcement officials.

Plaintiffs seek reconsideration of:

1.) the holding that state law violations cannot constitute violations of the federal equal protection clause;

2.) the dismissal of claims against the City of Oneonta;

3.) the denial of certification to proposed Class II;

4.) the grant of summary judgment in favor of defendants for claims brought under the fourth amendment;

5.) the holding that compensatory damages are not available under Title VI;

6.) the grant of summary judgment in favor of defendants for claims brought pursuant to New York Civil Rights Law.

Furthermore, plaintiffs seek final judgment or certification of several issues to the circuit court for interlocutory appeal.

---

**1.** The Local Rules for the Northern District of New York have since been amended and the new rules became effective on July 1, 1994.

## A. Untimely Filing of Oneonta Defendants' Motion for Reconsideration

■ The motion for reconsideration by the Oneonta defendants, although submitted in the form of opposition to plaintiffs' motion for reconsideration, cannot be considered by the court insofar as it goes beyond opposition to plaintiffs' motion. Under the version of Local Rule 10(m) which was in effect when this motion was filed[1] a motion for reconsideration must be filed within ten (10) days of entry of the order to which it pertains. This deadline cannot be extended by the court. Fed.R.Civ.P. 6(b). Because the Oneonta defendants raise new grounds for reconsideration which fall beyond the scope of opposition to plaintiffs' reconsideration arguments, and because their motion was not filed until February 28, 1994, 28 days after entry of the order, these argument cannot be considered due to untimeliness. The court, however, weighs the Oneonta defendants' submissions insofar as they respond to plaintiffs' reconsideration motion.

## B. Standard for Reconsideration

■ A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice. *Larsen v. Ortega,* 816 F.Supp. 97, 114 (D.Conn.1992). It appears that many of these motions for reconsideration rely on the third prong of this test: the need to correct a clear error of law or prevent manifest injustice. "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990). The motion for reconsideration is not a device "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor,* 444 F.Supp. 879, 889 (E.D.Va.1977). It is in light of this standard that the court undertakes reconsideration of its January 31, 1994 order.

## C. Hartmark Motion for Reconsideration of FERPA Liability

Defendant Hartmark seeks reconsideration of the court's denial of summary judgment in his favor on the FERPA claim. Hartmark bases this motion on the alleged availability of new evidence. He claims that since the order was signed it has come to his attention that the Public Safety Office ("PSO") at SUNY Oneonta ("SUCO") maintains records of all enrolled students and copies of photo identification cards for all students. Furthermore, he claims that it has come to his attention that the PSO has access to a database called "Banner" through its own computer system and that the Banner database contains information on all students' names, addresses and ethnicity. Hartmark contends that since the PSO could have generated its own list of black male students without the intervention of Hartmark and the campus computer center the list should be considered to fall within the law enforcement records exception to FERPA, thus alleviating Dr. Hartmark of potential liability.

Putting the substantive legal argument aside, the court must examine whether this can truly be considered "new evidence." Newly discovered evidence presented in support of a motion for reconsideration must be of the type which, with due diligence, could not have been discovered by the appellants prior to entry of the judgment. *Music Research, Inc. v. Vanguard Recording Soc'y, Inc.*, 547 F.2d 192, 196 (2d Cir.1976); *United States ex rel. Lynch v. Sandahl*, 793 F.Supp. 787, 896 (N.D.Ill.1992). In this case, the court cannot see, nor has defendant Hartmark offered, an argument as to why this information could not have been produced during the original motion. Defendant merely notes that this information has recently come to his attention. Certainly this is not enough to support that with the use of due diligence this information could not have been discovered earlier. Thus, defendant Hartmark's motion for reconsideration is denied and the FERPA claim against him survives.

## D. Qualified Immunity for Defendants Wilson and Hunt

Defendants seek reconsideration of the court's decision not to grant qualified immunity to defendants Wilson and Hunt. Although it is not specified, the court assumes that these defendants seek reconsideration based on the grounds that it is necessary to remedy a clear error of law or to prevent obvious injustice. Wilson and Hunt claim that the court applied the qualified immunity test improperly and assert that they cannot be held liable under 42 U.S.C. § 1983 unless it was clearly established that an exception to FERPA did not apply to the release of the list of black male students. The court disagrees.

As stated in the original oral decision, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990). For an action of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The court stands by its original decision that because FERPA had been in place since 1974, articulating what types of information may be released without student consent, the statute was a clearly established law. Thus, the court must examine whether it was objectively reasonable for state college officials to believe that the release of the list would not violate students' rights as established under FERPA. Defendants essentially argue that since there is a surviving question of fact as to whether the release of the list falls within the emergency exception to FERPA, it was reasonable for the defen-

dants to assume that it did fall within the exception, and thus qualified immunity should be applied. The court views the situation differently.

■ Defendants confuse the question of fact (whether the situation at hand provided that the release of the list fell within FERPA's emergency exception) with the question of whether the decision to release the list was objectively reasonable. It is not inconsistent for the court to find that whether an emergency existed is a question of fact for the jury while at the same time finding that the defendants are not entitled to qualified immunity. To show that the defendants are entitled to qualified immunity in this situation, they would have to show that based upon their knowledge at the time of the incident, it was reasonable to assume that an emergency situation existed which was sufficient to overcome FERPA's prohibition on the release of non-directory information in light of the fact that the emergency exception is to be "strictly construed". 33 CFR § 99.36(b).

The court finds that the defendants have not met this burden of proof and that a reasonable college official, construing FERPA's emergency exception narrowly, as required by law, would have refused to release the list. Thus, the court stands by its original determination that qualified immunity does not apply to defendants Wilson and Hunt in regard to their alleged FERPA violation.

Furthermore, although the court is obviously bound the precedent set in *Weg v. Macchiarola*, 995 F.2d 15 (2d Cir.1993), the *Weg* holding does not require a finding of qualified immunity in this case. In *Weg* the Second Circuit Court of Appeals stated that, "public officials do not lose a qualified immunity when their conduct is reasonably based upon the language of a statute even though some attorneys, trial courts, or even intermediate appellate courts have ruled otherwise." *Weg*, 995 F.2d at 18. However, this court finds that the conduct of the defendants was not reasonably based on the language of the statute. Based on the facts established thus far in the case, it is not clear that FERPA's emergency exception can be easily read to cover this situation. If that were the case

summary judgment would have been granted. It is exactly that issue which must be decided by the jury. Thus, the defendants cannot rely on the fact that their conduct was reasonable under the statute to support a finding of qualified immunity. To hold otherwise would ultimately allow qualified immunity to bar a FERPA claim from reaching the jury any time a question of fact remained as to the existence of an emergency.

### E. Refusal to Dismiss 42 U.S.C. § 1981 Claims

Defendants argue that the court's decision not to dismiss plaintiffs' claims under 42 U.S.C. § 1981 was incorrect. Defendants argue that the elements of a § 1981 claim are the same as those necessary to set forth an equal protection claim under the fourteenth amendment. Thus, because plaintiffs failed to allege specific situations where a similarly situated non-minority group was treated more favorably the § 1981 claims must fail.

■ The law is clear that in order to state a claim under § 1981, the plaintiffs must plead facts which establish that defendants' actions were racially motivated and purposefully discriminatory. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir.1988). It is equally well settled that "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation ... fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978). For that reason complaints which have simply alleged in a conclusory manner that, for example, a plaintiff was terminated from his job due to his race, have not survived a Rule 12(b)(6) motion. *See, e.g., Birnbaum v. Trussell*, 347 F.2d 86 (2d Cir.1965).

The key question in examining the sufficiency of a claim based on § 1981 is whether "plaintiffs assembled specific facts adequate to show or raise a plausible inference that they were subjected to race-based discrimination." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 17 (1st Cir.1989). "Under § 1981, the events of the intentional and purposeful discrimination, as well as the ra-

cial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under Rule 12(b)(6)." *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y. 1993). In order to make a proper pleading under § 1981, plaintiffs must allege some facts that demonstrate that their race was the reason for the defendants' actions. *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir. 1982). Failure to allege such facts makes the claim incomplete. *Id.*

■ Generally, examples of disparate treatment are not a necessary element of a well-pleaded § 1981 claim. *Melson v. Kroger Co.,* 550 F.Supp. 1100, 1106 (S.D.Ohio 1982). Nevertheless, claims of selective enforcement under § 1981 do require a showing of specific instances in the complaint where the plaintiffs were singled out for unlawful oppression in contrast to others similarly situated. *Yusuf,* 827 F.Supp. at 956; *Albert,* 851 F.2d at 573. Clearly, plaintiffs' § 1981 claims are based on selective enforcement, but just as with their fourteenth amendment claims, they have failed to support the allegations of discrimination with specific instances where they were singled out for unlawful oppression in contrast to others similarly situated. Thus, defendants' motion for reconsideration of the viability of the § 1981 claims is granted and plaintiffs claims pursuant to § 1981 are dismissed. However, seeing that the court has granted plaintiffs leave to replead their fourteenth amendment equal protection claims in order to add examples of situations where they were treated discriminatorily in contrast to other similarly situated non-minorities, the court also grants plaintiffs leave to replead the § 1981 claims in order to add such detail.

Defendants' other argument—that race is a permissible factor that police may use in pursuing criminal investigations—will not be discussed here because it essentially asks the court to grant summary judgment in their favor on the § 1981 claims, a motion not originally presented for the court's review. Moreover, this argument is moot due to the dismissal of the § 1981 claims.

### F. Refusal to Dismiss Title VI Claims

Likewise, the defendants argue that the court should have dismissed plaintiffs' Title VI claims because they require the same pleading elements as fourteenth amendment equal protection claims. As the defendants admit, to raise a valid claim under Title VI, the plaintiff must allege that the conduct in question had a racially discriminatory effect; the plaintiff does not need to allege an intent to discriminate. *Lora v. Board of Educ.,* 456 F.Supp. 1211, 1277 (E.D.N.Y.1978), *vacated on other grounds,* 623 F.2d 248 (2d Cir.1980). The defendants thus argue that the specific allegations in the complaint do not show disparate impact as required for a valid Title VI claim. The court disagrees and preserves its original decision that the facts alleged in the complaint are sufficient to support a Title VI claim. The court finds that the facts presented in the complaint, especially the factual allegations in paragraphs 57 through 76, properly allege discrimination against black persons.

### G. Availability of Compensatory Damages Under Title VI

■ On a related noted, plaintiffs seek reconsideration of the court's holding that compensatory damages are not available under Title VI. Plaintiffs clarify upon reconsideration that they seek relief under Title VI based on the theory of intentional discrimination. Viewing the Title VI claim in that light, monetary damages are an available remedy. *See Franklin v. Gwinnett County Pub. Sch.,* —— U.S. ——, ——, 112 S.Ct. 1028, 1035, 117 L.Ed.2d 208 (1992), *citing, Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 595, 103 S.Ct. 3221, 3229 (1983) (noting that damages are available under Title VI for intentional violations). Thus, the plaintiffs' motion for reconsideration on this ground is granted.

### H. Qualified Immunity Under § 1981

The law enforcement defendants, both those employed by the state and those who are City of Oneonta employees, now claim that their actions in conducting the investigation are protected by qualified immunity. The court refers back to Section D of this order for the qualified immunity standard.

It is clear that the law delineating proper conduct during questioning by law enforcement officials was clearly established at the time of this investigation. However, none of these defendants has presented the court with evidence regarding his actions. Thus, it is impossible for the court to assess whether their conduct during the investigation was objectively reasonable in light of established law. Thus, the defendants motion for qualified immunity is denied.

## I. State Law Cause of Action Based on *Hollman* and *Debour* Cases

Defendants assert for the first time on this motion for reconsideration that the plaintiffs have no vehicle under state law by which to recover for violations of state law involving investigatory stops by law enforcement officials. Without reaching the merits, the court summarily declines to entertain this argument because of its improper inclusion in a motion for reconsideration. "Motions for reconsideration are not vehicles for advancing theories or arguments which could have, but were not, advanced in the original motion." *Larsen*, 816 F.Supp. at 114. Because the court finds no reason why this argument could not have been advanced in the earlier motion, it refuses to consider it now. Thus, defendants' motion for reconsideration on these grounds is denied.

## J. Court's Finding that State Law Violations Do Not Constitute Violations of the Equal Protection Clause

■ Plaintiffs assert that violations of state law may be used to support a violation of the federal constitution, more specifically the equal protection clause of the fourteenth amendment. The Supreme Court in *Snowden v. Hughes,* stated that:

not every denial of a right conferred by state law involves a denial of the equal protection of the laws ... [and] [t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination ... [and this] discriminatory purpose is not presumed,

there must be a showing of "clear and intentional discrimination."

*Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) (citations omitted).

The Second Circuit elaborated on this decision in *FSK Drug Corp. v. Perales,* stating:

[a] claim of selective application of a facially lawful state regulation requires a showing that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992).

Thus, a showing of a state law violation on its own is not enough to support a constitutional violation. The plaintiffs must plead the elements outlined in *FSK Drug Corp.* in order to present a valid equal protection claim based on violation of state law. Since the plaintiffs failed to do so in their original complaint, their equal protection claims were dismissed. Thus, the court's acceptance of this analysis does nothing to remedy the defect in plaintiffs' equal protection claims. So, while the court notes that in some cases a state law violation can give rise to a federal constitutional claim, it denies reconsideration of the equal protection claims set forth in the plaintiffs' complaint and upholds its decision to dismiss these claims based on insufficient pleading.

## K. Court's Grant of Summary Judgment in Favor of Defendants on Fourth Amendment Claims

In its original decision, the court granted summary judgment in favor of the defendants for all claims based on fourth amendment violations. The plaintiffs now seek reconsideration of that decision, however, the argument they present does not involve newly discovered evidence, a change in the controlling law, or information which leads the court to believe that its original decision amounts to manifest injustice. Plaintiffs simply reiterate the facts specific to each individual's encounter with law enforcement

officers and urge the court that the situations did, in fact, amount to seizures. Furthermore, the plaintiffs exhort the court to adopt a "reasonable black person" standard in lieu of the "reasonable person standard" to judge whether seizures occurred.

While more a subjective standard may have been adopted in the realm of sexual harassment law, as the plaintiffs point out, they have presented no indication that this increasing subjectivity has been accepted in the area of fourth amendment law, nor have the plaintiffs presented any reason why such an argument was not available for presentation in their original motion. Thus, based on the fact that plaintiffs have failed to meet the applicable standard, the court denies their motion to reconsider dismissal of the fourth amendment claims.

## L. Court's Grant of Summary Judgment in Favor of the City of Oneonta

Plaintiffs assert that the court erred in granting summary judgment in favor of the City of Oneonta ("the City") in regard to the alleged fourth amendment violations. The court found in its original decision, and again in this order, that the fourth amendment claims presented by the plaintiffs could not survive defendants' summary judgment motion, and therefore dismissed all such claims. On this basis, the court also held *sua sponte* that the City of Oneonta could not be held liable for fourth amendment violations under the *Monell* doctrine because no fourth amendment violations remained against the individual Oneonta police officers. The court does not question this logic.

Plaintiffs now assert that the court erred in granting summary judgment in favor of the City of Oneonta on the fourth amendment claims because, as previously argued on the equal protection claims, a violation of state law can form the basis of a federal constitutional claim. Because the state law violations still stand against the City, the plaintiffs argue that federal equal protection claims could stem from these alleged state violations.

The court does not refute this possibility. However, it notes that it granted summary judgment in favor of the City under the *Monell* doctrine only for the alleged fourth amendment violations. Furthermore, as stated previously, in order to properly plead an equal protection claim based on alleged violations of state law, the plaintiffs must assert that: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *FSK Drug Corp.*, 960 F.2d at 10. Since the complaint before the court in its original decision did not meet this standard, all claims for equal protection violations were dismissed with leave to replead. Thus, the court's original decision had no bearing on the City's potential *Monell* liability for equal protection violations if such claims are properly pleaded in the amended complaint and such complaint is accepted for filing. Therefore, the court denies reconsideration on this issue.

## M. Court's Denial of Class Certification for Proposed Class II

In its original decision, the court refused to certify a proposed Class II of individuals who allege violations of their constitutional rights during encounters with law enforcement officers. Plaintiffs sought to certify Class II to include:

> the class of non-white persons sought out, approached, questioned, seized and/or searched by law enforcement officials, during the period of September 4 through September 9, 1992.

In the underlying decision, the court ruled that members of proposed Class II failed to meet the requirement of common questions of law or fact pursuant to Fed.R.Civ.P. 23(a)(2) because each individual had a separate and distinct encounter with the law enforcement officers and under the *Mendenhall* test it is impossible to assess whether the fourth amendment rights of an entire class have been violated. Plaintiffs now argue that this decision was in error because, not only were the members of proposed Class II subjected to violations of their fourth amendment rights during police encounters, they

were subject to violations of their equal protection rights as well. Because the court's decision was based solely on a discussion of the plaintiffs' fourth amendment claims, the plaintiffs assert that the equal protection arguments were ignored, and so the court's decision to deny class certification was in error.

The plaintiffs assert that they were "targeted as a class" although each proposed member of Class II had a separate and distinct encounter with law enforcement officials. Regardless, Class II certification is sought in regard to the claims based on the fourth and fourteenth amendments. In the original decision both the fourth and fourteenth amendment claims were dismissed. The decision to dismiss the fourth amendment claims with prejudice and to dismiss the fourteenth amendment claims with leave to replead has been upheld in this decision. Although the court granted leave to replead the equal protection claims, at this time the second amended complaint has yet to be accepted for filing and so the court does not have equal protection claims before it on which to examine the requested class certification.[2] Thus, if the amended complaint is accepted for filing, and if it includes properly pleaded claims based on alleged equal protection violations, the court will reconsider the merits of Class II certification at that time.

## N. Court's Grant of Summary Judgment in Favor of Defendants on Claims Based on New York Civil Rights Law § 40–c

The plaintiffs correctly point out that in its oral decision the court cited the definition of harassment in the first degree found at New York Penal Law § 240.25 effective November 1, 1992. The court determined that based on that definition of harassment, which requires repeated conduct in order to find a violation, the facts presented by the plaintiffs did not show that any defendant had harassed the plaintiffs, and so granted summary judgment in favor of the defendants.

Plaintiffs now point out that on September 4, 1992, the date of the alleged violation, a different definition of harassment was in effect. Nonetheless, this definition too requires repeated actions in order to find a violation. *See* N.Y.Penal Law § 240.25 (McKinney 1989)[3]; *see also People v. Wood,* 59 N.Y.2d 811, 451 N.E.2d 485, 464 N.Y.S.2d 738 (Ct.App.1983) (stating that harassment cannot be established without the presentation of evidence that defendant's conduct was more than an isolated incident). So based on the same lack of facts supplied by the plaintiffs in the original motion, the court holds that both under the new and old definitions of harassment found at Penal Law § 240.25, summary judgment is appropriately granted in favor of the defendants on claims pursuant to New York Civil Rights Law § 40–c.

## O. Plaintiffs' Motion for Certification

Plaintiffs seek the entry of a final judgment on the issue of fourth amendment violations including the determination of summary judgment in favor of the City of Oneonta on the fourth amendment violations. Plaintiffs bring this motion pursuant to Fed.R.Civ.P. 54(b) and alternatively, should the court refuse their Rule 54(b) motion, they seek certification to the Second Circuit Court of Appeals on these issues pursuant to 28 U.S.C. § 1292(b). Plaintiffs also seek certification of an appeal on the issues of Class II certification but this issue is not ripe for final judgment at this time because the court has not yet ruled on the motion for reconsideration. Plaintiffs also seek certification on the issue of the ability of state law violations to form the basis of federal constitutional violations, but this has been rendered moot by a previous section of this decision. Thus, the court will only examine certification and en-

---

**2.** The court will not rule on whether to accept plaintiffs' proposed Second Amended Complaint at this time. The matter has been referred to Magistrate Judge Hurd and will be decided by him at a later date.

**3.** The only part of § 240.25 as applicable on September 4, 1992 which is relevant to plaintiffs case reads:

A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

5. He engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

N.Y.Penal Law § 240.25 (McKinney Supp.1993).

try of final judgment on the fourth amendment issues.

### 1. Rule 54(b) Motion

 In order to satisfy the requirements of Rule 54(b) a judgment must be final pursuant to 28 U.S.C. § 1291 and the claim must be separable and independent from the remaining claims. *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 182 (2d Cir.1978). These criteria have been met in this instance. However, the analysis does not end there for Rule 54(b) also requires a determination by the trial judge that "there is no just reason for delay." Fed.R.Civ.P. 54(b).

 This determination is not to be made lightly especially in cases, such as this, where the action will remain pending against all the parties regardless of the decision to grant final judgment. *Brunswick Corp.*, 582 F.2d at 183. The underlying policy is to avoid piecemeal appeals, and therefore, in order to grant a Rule 54(b) motion, the court must find that there is "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Id., quoting, Western Geophysical Co. of America, Inc. v. Bolt Assoc., Inc.*, 463 F.2d 101, 103 (2d Cir.1972). Here, the plaintiffs have presented no evidence of threatening hardship or injustice due to delay that would be remedied by an immediate appeal, and so plaintiffs' Rule 54(b) motion is denied.

### 2. Motion Pursuant to 28 U.S.C. § 1292(b)

In regard to their alternative argument under 28 U.S.C. § 1292(b), plaintiffs argue that an interlocutory appeal is proper on the court's fourth amendment rulings. 28 U.S.C. § 1292(b) allows an interlocutory appeal if the district court order "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation."

 Clearly, whether a seizure occurred is a question of law. *United States v. Glover*, 957 F.2d 1004, 1007 (2d Cir.1992). However, "even when the question is the supposed question of law whether there are any genuine issues of material fact that preclude the grant of summary judgment, it seems better to keep courts of appeals aloof from interlocutory embroilment in such factual details." 16 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3930 (1977); *see also Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir.1991) (stating that where the controlling question of law is whether outstanding issues of material fact remain, interlocutory appeal is not available so that the district court proceedings may be advanced). Here, the "controlling question of law" is clearly whether this court properly granted summary judgment on the fourth amendment issues. Since this determination, although a legal issue, is essentially fact based in nature, interlocutory appeal is inappropriate. Thus, plaintiffs' motion for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

### CONCLUSION

In conclusion, the court denies the Oneonta defendants' reconsideration motions as untimely and denies defendant Hartmark's motion for reconsideration of the FERPA claim. The court upholds its original decision not to grant qualified immunity to defendants Wilson and Hunt in regard to the FERPA claim. The court grants defendants' motion for reconsideration of the claims pursuant to 42 U.S.C. § 1981 and hereby dismisses these claims with leave to replead. However, the court refuses to reconsider its original decision regarding the viability of the Title VI claims. Also, the plaintiffs' motion for reconsideration of the availability of compensatory damages under Title VI is granted.

The defendant law enforcement officers' motion for reconsideration of qualified immunity is denied and the court also denies consideration of defendants' argument that plaintiffs have no vehicle under state law by which to recover for violations of state law involving investigatory stops by law enforcement officials. The court denies reconsideration of its decision to dismiss plaintiffs' equal protection claims, but recognizes that in some instances such claims can be supported by violations of state law.

Reconsideration is denied in regard to the finding of summary judgment in favor of the

defendants on the fourth amendment claims and the New York Civil Rights Law claims. Furthermore, reconsideration is denied on the finding of summary judgment in favor of the City of Oneonta in regard to the fourth amendment claims. Reconsideration of the denial of certification for proposed Class II is postponed until such time as a second amended complaint with valid equal protection claims is filed with the court. Plaintiffs' motions for final judgment and interlocutory appeal are also denied.

**IT IS SO ORDERED.**