**In re PERRY H. KOPLIK & SONS, INC., Debtor.**

**Michael S. Fox, as Litigation Trustee of Perry H. Koplik & Sons, Inc., Plaintiff,**

**v.**

**Bank Mandiri, formerly known as Bank Dagang Negara, Defendant.**

**No. M–47 (VM).**
**Bankruptcy No. 02–B–40648 (REG).**
**Adversary No. 05–01136–REG.**

United States District Court, S.D. New York.

Oct. 10, 2007.

*DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Bank Mandiri ("Bank Mandiri"), defendant in the underlying bankruptcy adversary proceeding, brought this action seeking leave to appeal from the denial of its motion to dismiss (the "Order") issued by the Bankruptcy Court for this District (the "Bankruptcy Court") on October 23, 2006. *See In re Perry H. Koplik & Sons, Inc.,* 357 B.R. 231 (Bankr.S.D.N.Y.2006); *see also* 28 U.S.C. § 158(a)(3) (" § 158(a)(3)"); Federal Rule of Bankruptcy Procedure 8001(b) and 8003.

Before the Court is a petition requesting a determination that Bank Mandiri may appeal the Order to this Court pursuant to § 158(a)(3). That provision authorizes appeals, "with leave of the court, from other interlocutory orders and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a)(3). On appeal, Bank Mandiri requests a reversal of the Order.[1]

Plaintiff Perry H. Koplik & Sons, Inc. ("Koplik"), Debtor in the bankruptcy proceeding, argues that leave to appeal should not be granted because (1) Bank Mandiri did not meet its burden of showing "exceptional circumstances;" (2) Bank Mandiri did not raise controlling questions of law as to which there is a ground for substantial difference of opinion; and (3) an immediate appeal would not advance the current litigation. (Plaintiff s Memorandum of Law Answering Defendant's Motion for Leave to Appeal, dated Dec. 1, 2006 ("Pl. Mem.")) For reasons explained below, the

1. Pursuant to Rule 8003 of the Federal Rules of Bankruptcy Procedure, Bank Mandiri's questions for appeal are: (1) "whether a plaintiff who initiates a litigation in a foreign jurisdiction and obtains an adverse result in that jurisdiction is judicially estopped from then initiating a subsequent litigation in the United States on identical claims and issues to obtain a more favorable result;" (2) "whether, in considering deference to a foreign judgment, a court may ignore direct and uncontroverted evidence of procedures compatible with due process in the foreign judicial system and lack of corruption in the specific foreign legal proceedings at issue in favor of hearsay reports of general corruption in a foreign judicial system as a whole, despite a long line of decisions in this Circuit specifically prohibiting 'sweeping condemnations' of foreign judiciaries;" and (3) "whether a foreign judgment may be accorded res judicata collateral estoppel effect pending appeal in the foreign jurisdiction?" (See Bank Mandiri's Memorandum of Law in Support of its Motion to Dismiss for Leave to Appeal to the United States District Court the Denial of its Motion to Dismiss the Amended Complaint, dated Nov. 17, 2006 ("Def.Mem."))

Court denies Bank Mandiri's motion for leave to appeal.

## I. BACKGROUND

Koplik, a New York corporation in the paper milling business, entered into a purchase and sales contract (the "Contract") with P.T. Citra Hutama Kertasindo ("Kertasindo"), an Indonesian company, to purchase second-hand paper mill machines and equipment. The contract provided that Koplik would finance the purchase, on condition that Kertasindo would secure its payment obligation with a letter of credit.

On January 28, 1999, Kertasindo procured a letter of credit in the amount of $5.3 million (the "Letter of Credit") from Bank Mandiri's predecessor, Bank Da-Gang Negara, an Indonesian bank with a branch located in New York. The Letter of Credit provided that Kertasindo was obligated to pay Koplik upon receipt of the paper mill machines and equipment and, in the event that Kertasindo defaulted, Bank Mandiri would pay Koplik.

In March and April of 1999, Kertasindo received the paper mill machines and equipment but defaulted on its obligation to pay Koplik. In May 1999, Koplik attempted to collect payment from Bank Mandiri under the Letter of Credit but Bank Mandiri declined to honor it.

On March 10, 2000, Koplik filed suit against Kertasindo and Bank Mandiri in the Surabaya District Court in Indonesia seeking to recover payment on the $5.3 million debt. In July 2000, the Surabaya District Court ruled that the Letter of Credit was binding and ordered Bank Mandiri to pay Koplik $5.3 million (the "July 2000 District Court Decision"). *See In re Koplik*, 357 B.R. at 235. Bank Mandiri appealed to the Indonesian High

Court, an intermediate appellate court, which on September 11, 2000, "cancelled" the July 2000 District Court Decision (the "September 2000 High Court Decision"). *Id.*

Koplik appealed the September 2000 High Court Decision to the Indonesian Supreme Court, Indonesia's Highest Court, and, in a decision dated May 30, 2002, the Indonesian Supreme Court reinstated the July 2000 District Court Decision enforcing the Letter of Credit (the "May 2002 Supreme Court Decision"). *See id.*

Bank Mandiri appealed the May 2002 Supreme Court Decision and, on September 29, 2003, the Indonesian Supreme Court vacated its earlier decision enforcing the Letter of Credit on the ground that there was a defect in the power of attorney provided by Koplik (the "September 2003 Supreme Court Decision"). The Indonesian Supreme Court explained that Koplik was required to have the power of attorney acknowledged by a notary public, which Koplik had done, and, to have the acknowledgment of the power of attorney "legalized"[2] by an officer of the Indonesian Consul in New York, which Koplik had not done.

During the course of these events, in December 2002, a separate litigation was filed in Indonesia's Surabaya District Court by Kertasino against Koplik regarding the validity of the Contract. That court rendered a decision on July 15, 2003 (the "July 2003 District Court Decision") holding that the Contract was void for fraud, thereby declaring the Letter of Credit null and void and ordering Bank Mandiri to "suspend the payment" on the Letter of Credit until "judgment for this case has been final, binding and enforce-

---

**2.** This refers to a second level of authorization similar to what New York practitioners refer to as a "notarial flag" to attest that the notary is a notary. *See id.* at 236.

able." *Id.* at 237. In June 2006, Koplik appealed the July 2003 District Court Decision and that appeal is currently pending. *Id.*

Also during this period, on March 11, 2002, Koplik's creditors filed an involuntary action in the Bankruptcy Court pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. The Chapter 7 proceeding was converted to a Chapter 11 Plan of Reorganization, pursuant to which a trustee was appointed. *See id.* § 1101 et seq. On February 8, 2005, Michael S. Fox (the "Trustee") filed a complaint in the Bankruptcy Court and in May 2005, an amended complaint. On May 16, 2005, Bank Mandiri filed a motion to dismiss the amended complaint asserting that (1) the action is barred by res judicata, (2) comity requires respect for the proceeding in Indonesia, (3) doctrines of collateral and judicial estoppel preclude the Trustee from relitigating, (4) Koplik's Plan of Reorganization did not properly preserve the Bankruptcy Court's retention of jurisdiction over the Trustee's claims, and (5) the Bankruptcy Court lacked personal jurisdiction over Bank Mandiri.

On October 23, 2006, the Bankruptcy Court issued the Order denying Bank Mandiri's motion to dismiss. Bank Mandiri's instant appeal followed.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

Because the Order did not address the merits of the parties' underlying dispute, it was not a "final order" appealable as of right under § 158(a)(1). Pursuant to § 158(a)(3), "with leave of the court," district courts have jurisdiction to hear appeals from "interlocutory orders and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(3). To determine whether leave to appeal should be granted, district courts apply the standards prescribed in 28 U.S.C. § 1292(b) (" § 1292(b)"). *See In re Kassover*, 343 F.3d 91 (2d Cir.2003); *In re Enron Corp.*, No. 01–16034, 2006 WL 2548592, at *3 (S.D.N.Y. Sept. 5, 2006).

Under § 1292(b), the district court, in its discretion, may permit an appeal of an interlocutory order from the bankruptcy court if (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeals permitted under § 1292(b) are "disfavored." *In re Enron Corp.*, 2006 WL 2548592, at *3 (citation omitted). The Second Circuit has "repeatedly urged the district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir.1992) (citation omitted). The Circuit Court has also stressed that "the district court's power to grant an interlocutory appeal should not be 'liberally construed.'" *In re Worldcom, Inc.*, Nos. 02–13533, 04–04338, 2006 WL 3592954, at *2 (S.D.N.Y. Dec. 7, 2006) (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave*, 921 F.2d 21, 24–25 (2d Cir.1990)).

■ The party seeking an interlocutory appeal has the burden of showing "exceptional circumstances" to "overcome the general aversion to piecemeal litigation" and "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer*, 921 F.2d at 24; *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996); *Williston v. Eggleston*, 410 F.Supp.2d 274, 276 (S.D.N.Y.2006).

■ As to the first prong, whether or not the order "involves a controlling question of law," the "resolution of an issue

need not necessarily terminate an action in order to be controlling[; however,] ... it is clear that a question of law is controlling if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. Additionally, the question of law must "refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Enron*, 2006 WL 2548592, at \*4 (citation and quotation marks omitted); *Freeman v. NBC, Inc.* No. 85 CV 3302, 1993 WL 524858, at \*2 (S.D.N.Y. Dec. 15, 1993) (citations omitted). Moreover, "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Freeman*, 1993 WL 524858, at \*2.

■ As to the second prong, for there to be "substantial grounds for difference of opinion," the issue "must involve more than strong disagreement between the parties." *In re Enron*, 2006 WL 2548592, at \*4 (citation and quotation marks omitted). However, "this prong will be satisfied if the issue is 'difficult and of first impression,'" *In re XO Communications, Inc.*, Nos. 02–12947, 03 Civ. 1898, 2004 WL 360437, at \*3 (S.D.N.Y. Feb. 26, 2004), or if "there is conflicting authority on the issue." *Morris v. Flaig*, 511 F.Supp.2d 282, 312, 2007 WL 1029337, \*21 (E.D.N.Y.2007) (citations omitted). In determining whether a substantial ground for difference of opinion exists, "[i]t is the duty of the district judge ... to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *In re Flor*, 79 F.3d at 284 (citations and quotation marks omitted). Moreover, a bare claim that a bankruptcy court's ruling was incorrect is not sufficient to satisfy the standard. *See Aristocrat Leisure Ltd. v.*

*Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014, 2005 WL 3440701, at \*2 (S.D.N.Y. Dec. 14, 2005).

■ As to the third prong, an immediate appeal is considered to advance the ultimate termination of the litigation if that "appeal promises to advance the time for trial or to shorten the time required for trial." *Transport Workers Union of Am., Local 100, AFL–CIO v. N.Y.C. Transit Auth.*, 358 F.Supp.2d 347, 350 (S.D.N.Y. 2005) (citations and quotation marks omitted).

## B. APPLICATION OF § 1292(B) STANDARDS

In the instant case, Bank Mandiri's motion for leave to appeal seeks a reversal of the Order on the grounds that the Bankruptcy Court erred in ruling that principles of comity and res judicata did not warrant recognition of the Indonesian legal proceedings, and that the Trustee is not judicially estopped from litigating in the United States against Bank Mandiri.

The Court finds that there are no controlling questions of law in this dispute for which substantial ground for difference of opinion exists.

### 1. Recognition of the Indonesian Legal Proceedings

With respect to the questions of res judicata and international comity, Bank Mandiri's appeal does not present a "pure question of law" that this Court could decide "quickly and cleanly" without studying the record. *In re Enron*, 2006 WL 2548592, at \*4. Rather, the instant motion presents a question as to whether the Bankruptcy Court properly evaluated admissible evidence presented in determining that comity should not be granted to the Indonesian legal proceedings.

▇ The decision to grant comity is a matter within a court's discretion and the burden of proof to establish its appropriateness is on the moving party. *See Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 999 (2d Cir.1993). "Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. Ltd. v. Salen Reefer Services AB,* 773 F.2d 452, 457 (2d Cir.1985) (citations omitted).

▇ In the instant case, the Bankruptcy Court evaluated the evidence presented by Bank Mandiri and Koplik and made a factual determination that comity should not be granted. A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b). *See Morris,* 511 F.Supp.2d at 312, 2007 WL 1029337, at *21.

▇ Because the Court denies the motion for leave to appeal the question of comity, whether the Indonesian court's decisions should have res judicata effect is not appropriate for interlocutory appeal. *See In re Jackson Brook Institute, Inc.,* 280 B.R. 1, 5 (D.Me.2002) ("If the parties could be successful on alternative grounds or asserted theories, the question asserted may not be controlling.").

Bank Mandiri argues that the Trustee should be barred by the doctrine of res judicata from arguing that the Letter of Credit is valid and enforceable against Bank Mandiri because that issue was raised in the July 2003 District Court Decision. However, one reason the Bankruptcy Court rejected Bank Mandiri's argument was that it found that the July 2003 District Court Decision was not entitled to comity. *See In re Koplik.* 357 B.R. at 245. Therefore, granting Bank Mandiri leave to appeal on the question of res judicata when the issue of comity has been decided against it, a decision Bank Mandiri may very well appeal, will result in "piecemeal litigation" and "does not justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer,* 921 F.2d at 24; *In re Flor,* 79 F.3d 281, 284 (2d Cir.1996); *Williston,* 410 F.Supp.2d at 276. Accordingly, Bank Mandiri's appeal is denied with respect to comity and res judica as the Court finds that there are no controlling questions of law for which there is a substantial ground for difference of opinion.

### 2. *Judicial Estoppel*

[11] Bank Mandiri argues that a controlling question of law regarding judicial estoppel requires an interlocutory review of the Bankruptcy Court's order. On this point, Bank Mandiri presents a controlling question of law because reversal of the Bankruptcy Court's order on appeal would "terminate the action," insofar as it would resolve all claims against Bank Mandiri and it involves, arguably, a pure question of law that does not require the Court to review the record. *See In re Bradlees Stores, Inc.,* Nos. 00–16033, 00–16035, 00–16036, 01–CV–3934, 2001 WL 1112308, at *10 (S.D.N.Y. Sept. 20, 2001) (stating that "the ultimate determination that judicial estoppel does or does not apply is generally a question of law").

Although as to this issue, Bank Mandiri satisfies the first prong of the analysis under § 1292(b), there is no substantial ground for difference of opinion with respect to judicial estoppel. First, Bank Mandiri does not argue that a conflict in the law of judicial estoppel exists in the Second Circuit. *See Morris,* 511

F.Supp.2d at 312, 2007 WL 1029337, at *21 (stating that this prong can be satisfied if "there is conflicting authority on the issue.") (citations omitted). The law of judicial estoppel is well settled in the Second Circuit. The doctrine "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by the party in a prior legal proceeding." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 141 (2d Cir.2000) (citation and quotation marks omitted). The Second Circuit explained that "a party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner." *Id.* (citation and quotation marks omitted). The type of "inconsistency" required is a "clear inconsistency between the party's present and former positions." *Id.* (citation and quotation marks omitted).

Second, the issue before the Court does not present a question that is "difficult and of first impression." *In re XO Communications, Inc.*, 2004 WL 360437, at *3. The "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d at 284 (citations omitted). Rather, Bank Mandiri's central argument is that the Bankruptcy Court misapplied the Second Circuit's opinion in *Bridgeway*. 201 F.3d 134; (*see* Def. Mem. 11–12.)

In that case, Bridgeway Corp. ("Bridgeway") brought suit in Liberia against Citibank, seeking a declaratory judgment that Citibank was obligated to pay Bridgeway in United States dollars, rather than in Liberian currency. The trial court found in favor of Citibank but, on appeal, the decision was reversed by the Liberian Supreme Court and judgment was entered for Bridgeway. Bridgeway commenced an action in New York state court to enforce the Liberian judgment and Citibank removed to federal district court, where it sought to defend the claim by challenging the legitimacy of the Liberian judicial system. Bridgeway moved for summary judgment, arguing that Citibank was judicially estopped from questioning the fairness of the Liberian judiciary. The district court denied the motion and, sua sponte, granted summary judgment in favor of Citibank. The district court found, "as a matter of law, Liberia's courts did not constitute 'a system of jurisprudence likely to secure an impartial administration of justice' and that, as a result, the Liberian judgment was unenforceable in the United States." *Id.* (*quoting Bridgeway Corp. v. Citibank*, 45 F.Supp.2d 276, 287 (S.D.N.Y.1999)). The Second Circuit affirmed on appeal.

Before the Circuit Court, Bridgeway argued that Citibank participated in at least "a dozen civil cases in Liberia" and "in several of those cases, Citibank appeared as a Plaintiff ... without there raising any objections to the fairness of Liberian justice, [therefore,] Citibank should now be estopped from calling into question the validity of Liberian judgments." *Id.* at 141. Citibank responded that its participation in litigation in Liberia did not amount to an admission of the fairness of the Liberian judicial system.

The Second Circuit explained that "[i]n order for Bridgeway to prevail, we must conclude that voluntarily participating in litigation in a foreign tribunal is fundamentally inconsistent with the belief that the tribunal is unlikely to provide an impartial forum or one that comports with notions of due process." *Id.* The Second Circuit stated that "such a position is without merit" because "[d]efending a suit where one has been haled into court, and suing where

jurisdiction and venue readily exist do not constitute assertions that the relevant courts are fair and impartial." *Id.* In denying Bridgeway's appeal, the Second Circuit found that it "did not view Citibank's voluntary participation in Liberian litigation, even as a plaintiff, as clearly contradictory to its present position." *Id.*

In the instant case, Bank Mandiri is arguing that because Koplik initiated lawsuits in Indonesia against Bank Mandiri, the Court must conclude that Koplik's voluntary initiation of litigation in Indonesia is "clearly inconsistent" with the belief that the Indonesian court system is, unlikely to provide an impartial forum or one that comports with notions of due process. However, the Bankruptcy Court, relying on *Bridgeway,* rejected that argument. Bank Mandiri's claim that the Bankruptcy Court's decision was incorrect "does not suffice to establish substantial ground for a difference of opinion." *Morris,* 511 F.Supp.2d at 312, 2007 WL 1029337, at *21 (citation and quotation marks omitted). Nor does it "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer,* 921 F.2d 21 at 24; *In re Flor,* 79 F.3d 281, 284 (2d Cir.1996); *Williston,* 410 F.Supp.2d at 276. Accordingly, because the Court finds that there is no controlling question of law for which there is a substantial ground for a difference of opinion, Bank Mandiri's appeal is denied with respect to judicial estoppel.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Bank Mandiri for leave to appeal the Bankruptcy Court's Order dated October 23, 2006 issued in adversary proceeding No. 05–01136 is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**