In re **POSEIDON POOL & SPA RECREATIONAL, INC.,**
Debtor.

**Andrew M. Thaler, Trustee, Estate of Poseidon Pool & Spa Recreational, Inc., Plaintiff–Appellee,**

v.

**Estate of Vincent J. Arbore, Deceased, Diane Arbore, in her capacity as Executrix of the Estate of Vincent J. Arbore, Diane Arbore, Ann Arbore, Peter Arbore, Jayvin Arbore, Allison Arbore, Michael Arbore, Katherin Arbore, Alan Arbore, James Arbore, Rosa Dinicolo, and Rita Cannillo, Defendants–Appellants.**

No. 10–MC–753 (ADS).

United States District Court,
E.D. New York.

Dec. 8, 2010.

Jaspan Schlesinger Hoffman LLP, By: Hale Yazicioglu, Esq. & Linda S. Agnew, Esq., Of Counsel, Garden City, NY, for Defendants–Appellants.

Weinberg, Gross & Pergament, LLP, By: Mark A. Pergament, Esq., Of Counsel, Garden City, NY, for Poseidon Pool & Spa Recreational, Inc.

Thaler & Gertler, LLP, By: Andrew M. Thaler, Esq. & Michael A. Farina, Esq., of Counsel, East Meadow, NY, for Plaintiff–Appellee, Trustee Andrew M. Thaler.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The appellants, Estate of Vincent J. Arbore, Diane Arbore as Executrix of the Estate of Vincent J. Arbore, Diane Arbore, Ann Arbore, Peter Arbore, Jayvin Arbore, Allison Arbore, Michael Arbore, Katherine Arbore, Alan Arbore, James Arbore, Rosa Dinicolo, and Rita Cannillo, (collectively, "the Estate") seek leave to file an interlocutory appeal from a decision of the bankruptcy court (Dorothy D.T. Eisenberg, J.), holding that Poseidon Pool & Spa Recreational, Inc. (the "Debtor") was insolvent as of July 1, 2003.

### I. BACKGROUND

On or about May 24, 2002, Victor J. Arbore, a former officer, director, and shareholder of the Debtor entered into a redemption agreement and note whereby the Debtor agreed to redeem Arbore's ten shares of Debtor's stock for the purchase price of $450,000 (the "Redemption Agreement"). The Redemption Agreement was the result of a stipulation of settlement in an action entitled *Vincent J. Arbore v. Poseidon Pool & Spa Recreational, Inc., et al*, No. 01–013666, then pending in the Supreme Court, Nassau County. The Debtor paid Arbore $50,000, and then in conjunction with the redemption of Arbore's shares, the Debtor executed a Note in the amount of $400,000, which provided that the Debtor would pay Arbore in installments of $6,500 per month at an interest rate of 10% per annum.

After Mr. Arbore passed away in September 2002, the Debtor continued to make the payments to Mr. Arbore's estate, until September 2005 when the Debtor allegedly defaulted on its obligations under the Redemption Agreement. Subsequently, on October 7, 2005, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On or about September 5, 2006 Andrew M. Thaler was appointed Trustee of the Debtor's estate ("Trustee"), and on September 21, 2006

the bankruptcy proceeding was converted to a Chapter 7 bankruptcy proceeding.

On March 30, 2007, the Trustee filed the underlying adversary proceeding (the "Adversary Proceeding") against the Estate for, among other things, the return of any payments made under the Redemption Agreement that were not made out of surplus or were made when the Debtor was insolvent in violation of New York Business and Corporation Law section 513 ("BCL § 513"). On July 6, 2009, this Court upheld that Bankruptcy Court's finding that "redemption agreements (and ancillary agreements) that were valid and enforceable at inception [become] unenforceable upon insolvency" and remanded the case for additional determinations. *In re Poseidon Pool & Spa Recreational, Inc.*, No. 08–CV–3418, at 10 (July 6, 2009) (Docket # 7).

On January 25, 2010, Judge Eisenberg held an evidentiary hearing to determine "whether the Debtor had adequate surplus funds to purchase its shares, or was insolvent or rendered insolvent during the period from when the Debtor and Vincent J. Arbore entered into the redemption agreement at issue in May of 2002 and at any time thereafter when payments were being made pursuant to such redemption agreement." *In re Poseidon Pool & Spa Recreational, Inc.*, Bankr.No. 8–05–87603–478, Adv. No. 8–06–8222–478, 2010 WL 3895495, at *1 (Bankr.E.D.N.Y. Sept.30, 2010).

At the hearing, the Trustee offered documentary evidence and the expert testimony of Bernard Sandler, CPA (the "Trustee's accountant"), who testified that the Debtor could have been insolvent at the time the Redemption Agreement was executed on May 24, 2002, but even by conservative estimates was insolvent no later than the quarter ending June 30, 2003. In making these findings, the Trustee's ac-

countant performed a number of calculations based on the gross profit method of calculating inventory. In response, the Estate's counsel cross-examined the Trustee's accountant as to the accuracy of his findings in light of the deficiencies in the gross profit method and the Debtor's books and records. The Estate also put forth its own expert witness to testify that there was insufficient evidence to determine the date of Debtor's insolvency. By order dated September 30, 2010, Judge Eisenberg held that the Trustee had established, by a preponderance of the evidence, that the Debtor was insolvent as of July 1, 2003 (the "September 30, 2010 Bankruptcy Order").

As a result, the Estate moves this Court pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr.Proc. 8003(a) for leave to appeal the September 30, 2010 Bankruptcy Order. The Estate argues that interlocutory appeal is proper because: (1) The evidence presented by the Trustee to prove insolvency was insufficient to support the Bankruptcy Court's determination as a matter of law, (2) The Bankruptcy Court improperly placed the burden of proof on the Estate to show solvency, and (3) The Bankruptcy Court used the improper standard for showing insolvency under BCL § 513. For the reasons stated below, the request for leave to file an interlocutory appeal is denied.

In addition, the parties dispute whether the Estate was permitted to file a reply brief under Fed. R. Bankr.Proc. 8001 and 8003. The Trustee requests that, if the Court considers the Estate's reply brief, the Trustee be permitted to file a surreply. The Court makes no determination as to whether the bankruptcy rules permit the filing of a reply brief. Although the Court did consider the Estate's reply brief when deciding this motion, the Court notes that the reply brief contained no new argu-

ments. Also, because the Court ultimately denies the Estate leave to file an interlocutory appeal, the Trustee's request to file a sur-reply is denied.

## II. DISCUSSION

### A. Legal Standard for Leave to Grant an Interlocutory Appeal from a Bankruptcy Court Order

■ "Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." *In re Kassover,* 343 F.3d 91, 94 (2d Cir.2003); *see In re Cutter,* No. 05 Civ. 5527, 2006 WL 2482674, at *3 (E.D.N.Y. Aug. 29, 2006) (stating that, while neither § 158 nor the Bankruptcy Rules "provides guidelines for determining whether a district court should grant leave to appeal, ... most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)") (citations omitted). "In determining whether to grant leave to appeal an interlocutory order from the bankruptcy court, the Court will apply the standard set forth in 28 U.S.C. § 1292(b), which is the standard used by the court of appeals to determine whether to entertain interlocutory appeals from the district court." *Traversa v. Education Credit Management Corp.,* 386 B.R. 386, 388 (D.Conn.2008).

■ Thus, in deciding whether to grant leave to appeal an interlocutory bankruptcy court order, a district court should consider whether: (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Yerushalmi v. Shiboleth,* 405 B.R. 44 (E.D.N.Y.

2009). "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir.1996). Furthermore, all three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal. *See North Fork Bank v. Abelson,* 207 B.R. 382, 390 (E.D.N.Y.1997) (denying leave to appeal where there was a controlling issue of law, the determination of which would materially advance the litigation, but the moving party failed to show substantial grounds for difference of opinion). As set forth below, none of the Estate's arguments can meet all three requirements for an interlocutory appeal.

### B. Whether the Trustee Proved Insolvency by a Preponderance of the Evidence

The first issue presented by the Estate is whether the Bankruptcy Court erred in finding that the Trustee proved, by a preponderance of the evidence, that the Debtor was insolvent from July 1, 2003 until the Petition Date. The Estate maintains that Judge Eisenberg's decision cannot stand as a matter of law because: 1) the Debtor's method of calculating inventory that was subsequently used by the Trustee's accountant to prove insolvency—the "gross profit method"—is inaccurate and unreliable and therefore should not have been considered by the Bankruptcy Court; 2) the Bankruptcy Court improperly considered evidence of inventory prices based on the price at an auction; and 3) the Bankruptcy Court should have resolved inaccuracies and gaps in the Debtor's records in favor of the Estate.

■ The Estate asserts, and the Court agrees, that whether the Trustee met his

burden of proof initially presents an issue of law. However, the Court ultimately finds that whether the Trustee met his burden of proof as to the issue of insolvency is essentially a factual inquiry, which is not proper for review on interlocutory appeal.

 "To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *North Fork Bank v. Abelson,* 207 B.R. 382, 389 (E.D.N.Y. 1997). A determination that must be made "in equity or good conscience" cannot be characterized as a question of law that could be "decided quickly and cleanly without having to study the record." *Enron Corp. v. Springfield Assocs., L.L.C.* ("Enron/Springfield"), No. 01–16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept.5, 2006) (quoting *In re Worldcom,* No. M–47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). However, "where a 'legal' issue is 'essentially fact based in nature' interlocutory appeal is not appropriate." *In re Complete Retreats, LLC,* No. 3:07–MC–152, 2008 WL 220752, at *2 (D.Conn. Jan.23, 2008) (quoting *Brown v. City of Oneonta, N.Y.,* 858 F.Supp. 340, 349 (N.D.N.Y.1994), *rev'd on other grounds by,* 106 F.3d 1125 (2d Cir.1997)). "A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)." *In re Perry H. Koplik & Sons, Inc.,* 377 B.R. 69, 75 (S.D.N.Y.2007).

For example, "though the question of whether to stay a proceeding on the basis of international comity, pending the outcome of another case, is fairly considered a 'legal' question," courts tend to deny leave to file an interlocutory appeal challenging the bankruptcy court's finding because the resolution of the issue "requires a heavily fact-based analysis." *In re Complete Retreats, LLC,* 2008 WL 220752, at *3; *see also In re Lehman Bros. Holdings, Inc.,* 422 B.R. 403, 407 (S.D.N.Y.2009) ("This Court cannot review the Bankruptcy Court's determination regarding comity without performing the same careful study of the record, the relationships of the parties and the British action performed by the Bankruptcy Court, and thus cannot conclude that the appeal presents a controlling question of law."); *In re Perry H. Koplik & Sons, Inc.,* 377 B.R. at 74 ("Rather, the instant motion presents a question as to whether the Bankruptcy Court properly evaluated admissible evidence presented in determining that comity should not be granted to the Indonesian legal proceedings.").

Furthermore, courts also deny leave to file interlocutory appeals on summary judgment determinations, which present controlling issues of law, but also require an in-depth factual review. *See, e.g., Brown v. City of Oneonta, N.Y.,* 858 F.Supp. 340, 349 (N.D.N.Y.1994) ("Here, the 'controlling question of law' is clearly whether this court properly granted summary judgment on the fourth amendment issues. Since this determination, although a legal issue, is essentially fact based in nature, interlocutory appeal is inappropriate."); *Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991) (stating that where the controlling question of law is whether outstanding issues of material fact remain, interlocutory appeal is not available).

Similarly, to determine whether the Trustee established insolvency by a preponderance of the evidence, the Court would need to go through the same in-depth evidentiary analysis of the testimony

and documentary evidence already performed by Judge Eisenberg. Thus, with respect to whether the Trustee satisfied the burden of proof in showing insolvency by a preponderance of evidence, this does not present a "pure question of law" that this Court could decide "quickly and cleanly" without an in-depth review of the record. *Enron v. Springfield*, 2006 WL 2548592, at *4; *see also In re Cross Media Marketing Corp.*, Nos. 03–13901, 07 CV 878, 2007 WL 2743577, at *2 (S.D.N.Y. Sept.19, 2007) ("Since the issues to be appealed cannot be determined solely by interpreting the plain language of the Plan, but rather require an examination of other pleadings and exhibits, they are not pure legal questions of contract construction appropriate for interlocutory review.").

As to the second requirement, the Estate also contends that there is a substantial ground for difference of opinion as to whether, as a matter of law, a Trustee can meet his burden of proof where the Debtor's records are incomplete and inaccurate by employing the gross profit method and using an inventory value based on bankruptcy auction sales. To the extent the Estate is asking this Court to determine whether the Trustee can meet his burden solely based on evidence derived from the gross profit method, that issue is not relevant to the instant matter and therefore is not properly before the Court. In the September 30, 2010 Bankruptcy Order, Judge Eisenberg explicitly stated that she did not rely solely on the figures derived from using the gross profit method in determining whether the Trustee met its burden of proof. *In re Poseidon Pool & Spa Recreational, Inc.*, 2010 WL 3895495, at *8 ("While the Trustee's accountant concludes that the Debtor was probably insolvent during the period prior to July 1, 2003 … there is a lack of support given for what those adjustments may be and

whether such adjustments would be reasonable. More importantly, there is an absence of corresponding evidence showing that the Debtor was unable to pay its debts as they became due during the ordinary course of business from May 24, 2002 to about June of 2003. Given this uncertainty and based upon the evidence presented to the Court, the Court cannot find by a preponderance of the evidence that the Debtor was insolvent under section 513(a) of N.Y. Bus. Corp. Law § 513(a) from May 24, 2002 through June 30, 2003.").

Alternatively, to the extent the Estate is asking this Court to determine whether the evidence derived from using the gross profit method ought to be admissible to prove insolvency, there is no substantial ground for difference of opinion. Both the cases cited by the Estate and the Trustee show that any deficiencies in the gross profit method go to the weight of the evidence, not the admissibility. Therefore, whether the gross profit method or the use of inventory values derived from auction prices are sufficient evidence to show insolvency under BCL § 513 is a factual determination not proper for interlocutory appeal.

Finally, the Court does not view, as a controlling issue of law, whether Judge Eisenberg should have resolved the inaccuracies and gaps in the Debtor's books against the Trustee as opposed to the Estate. This is the same issue that the Estate identifies as an impermissible shift in the burden of proof, and as discussed below, the Court rejects this claim based on the text of the September 30, 2010 Bankruptcy Order.

## C. Whether the Bankruptcy Court Applied the Incorrect Burden of Proof

The Estate next argues that Judge Eisenberg applied the incorrect burden of

proof, or improperly shifted the burden of proof, by requiring the Estate to show solvency and holding the inaccuracies and gaps in the Debtor's books against the Estate as opposed to the Trustee. Whether the Bankruptcy Court applied the correct burden of proof constitutes an issue of law. However, the discussion and rationale in the September 30, 2010 Bankruptcy Order indicates that Judge Eisenberg applied the correct burden of proof, and therefore this issue cannot serve as the basis for an interlocutory appeal. *See Yerushalmi v. Shibolelth,* 405 B.R. 44, 48–49 (E.D.N.Y.2009) ("Contrary to Appellant's contention, upon reviewing Appellant's opposition papers, including Appellant's Brief, the issues raised in Appellant's appeal do not collectively establish 'a genuine doubt' as to whether the Bankruptcy Court applied the correct legal standard in denying Appellant's motion to dismiss as to the Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action in the Complaint.") (internal quotation and alteration omitted).

In the September 2010 Bankruptcy Order, Judge Eisenberg correctly identified the applicable burden of proof, stating that:

> The Trustee needs to demonstrate that the Debtor was insolvent by a preponderance of the evidence at the time the Redemption Agreement and Note was entered into on May 2002 or for any period thereafter up to the Petition Date in order to avoid the payments made by the Debtor to Arbore and the Defendants under the Redemption Agreement and Note during the relevant periods.

*In re Poseidon Pool & Spa Recreational, Inc.,* 2010 WL 3895495, at *5; *see Rehberger v. MRW Group, Inc.,* No. 05–CV–0210, 2008 WL 919665 (E.D.N.Y. March 31, 2008) ("It is well settled that the 'burden is on the corporation to establish that, at the time payments were to be made ..., it lacked the necessary surplus to make the payments or would thereby have been rendered insolvent.'") (citation omitted). After a thorough analysis of the Trustee's evidence, Judge Eisenberg addressed the Estate's objections, including the accuracy of the gross profit method and the flaws in the Trustee's accountant's findings. Judge Eisenberg then stated:

> Indeed, the Defendants have not submitted any evidence to rebut the testimony and analysis by the Trustee's accountant that the Debtor was insolvent as of July 1, 2003 or perhaps prior to July 1, 2003 when the Redemption Agreement was entered into. None of the Defendants' arguments has shown that the Debtor was indeed solvent at least from July 1, 2003 up to the Petition Date, other than the surplus shown on the Debtor's unadjusted books and records. If the Court were to grant the Defendants relief based upon their assertions that the Debtor's books and records, inaccurate as they may be, should be taken at face value, such reliance by the Court would reward the Defendants for inaccurate, unreliable and questionable record keeping by the Debtor. *The Court refuses to do so and believes that the analysis by the Trustee's accountant is supported by the record when all the financial information is taken into consideration.*

*In re Poseidon Pool & Spa Recreational, Inc.,* 2010 WL 3895495, at *8 (emphasis added). As evident by the opinion, Judge Eisenberg found that the evidence offered by the Trustee to prove insolvency was sufficient to make out a *prima facie* case of insolvency and was supported by the record. Furthermore, Judge Eisenberg did not require the Estate to provide evidence of solvency, but rather noted that the Estate had not provided such evidence. It is neither improper nor uncommon for

parties opposing a finding of insolvency to provide evidence of solvency. *See, e.g., Rehberger,* 2008 WL 919665 (holding that the defendant's proof was insufficient to show insolvency by a preponderance of evidence in light of the plaintiff's evidence of solvency). Nor have courts found that proving solvency is required. *See, e.g., Nakano v. Nakano McGlone Nightingale Advertising, Inc.,* 84 Misc.2d 905, 909, 377 N.Y.S.2d 996, 1001 (N.Y.Sup.Ct.1975) (granting summary judgment to the plaintiff without requiring any evidence by plaintiff where the defendant failed to provide any evidence of insolvency).

Judge Eisenberg further stated:

Although the Defendants argue that one cannot determine with any certainty that the Debtor was insolvent as a result of the inaccuracies found in the Debtor's books and records, the Trustee only needs to show by a preponderance of the evidence that the Debtor was insolvent during the periods in question and need not show the exact dollar amount of such insolvency.

*In re Poseidon Pool & Spa Recreational, Inc.,* 2010 WL 3895495, at *7. Thus, Judge Eisenberg weighed the Estate's objections about the inaccuracies and gaps in the records against the evidence presented by the Trustee, and found that the Trustee had met its burden of proof. Contrary to the Estate's contention, Judge Eisenberg did not resolve the inaccuracies and gaps in the Debtor's books against the Estate, but rather determined that the Trustee, through corroborating evidence, had overcome any reservations as to the accuracy of the figures. Even accepting the Estate's argument that the court's language indicated it was incorrectly placing the burden on them to prove solvency, where a court's language is contradicted by its actual analysis, the "defendants' burden-shifting argument is in itself erroneous

and provides no basis for interlocutory appeal." *Barnes v. American Tobacco Co., Inc.,* 176 F.R.D. 479, 497 (E.D.Pa.1997).

Although the Estate frames the issue on appeal as an improper shift in the burden of proof, the Estate's actual argument appears to be that the Trustee failed to make out a *prima facie* case of insolvency, and Judge Eisenberg should have found the Trustee's evidence less persuasive because the Estate's inability to show solvency was due to the Debtor's inaccurate books and records. Whether the Bankruptcy Court properly weighed the evidence in finding that the Trustee made out a *prima facie* case is a factual issue, not a legal issue, and therefore is not appropriate for interlocutory appeal. *See California Public Employees' Retirement System v. WorldCom, Inc.,* 368 F.3d 86, 96 (2d Cir.2004) ("By its plain terms, Section 1292(b) may only be used to challenge legal determinations."); *In re Fox,* 241 B.R. 224, 232 (10th Cir. BAP 1999) ("Appellant also alleges that the bankruptcy court improperly shifted the burden of proof to Appellant on the issue of the Debtor's good faith in filing the bankruptcy. We find that the Appellant incorrectly phrases this second argument as a legal issue, when it is actually a factual issue. The Appellant does not dispute the bankruptcy court's statement of where the burden of proof lies, but contends that the bankruptcy court improperly weighed the evidence. This issue is also not proper for interlocutory review.").

**D. Whether the Bankruptcy Court Applied the Correct Standard for Insolvency**

The final issue the Estate presents for appeal is whether Judge Eisenberg properly applied the standard for insolvency set forth in BCL § 513, which, as previously noted, is the statute under which the Trustee seeks to recover the redemption

payments. This statute provides in relevant part that "the shares of a corporation may not be purchased by the corporation, or, if redeemable ... may not be redeemed ... if the corporation is then insolvent or would thereby be made insolvent" and that "[s]hares may be purchased or redeemed only out of surplus." BCL § 513(a); *Rehberger v. MRW Group, Inc.,* No. 05–CV–0210, 2008 WL 919665, at * (E.D.N.Y. March 31, 2008). Insolvency for the purposes of BCL § 513 is defined as "the corporation's inability to pay debts as they become due in the usual course of business." *Nakano v. Nakano McGlone Nightingale Advertising, Inc.,* 84 Misc.2d 905, 907, 377 N.Y.S.2d 996, 1000 (N.Y.Sup. Ct.1975); *see also* N.Y. Bus. Corp. Law § 102(a)(8). BCL § 513 insolvency is commonly referred to as "equitable insolvency." *See In re Industrial Ceramics, Inc.,* 253 B.R. 323, 332 (Bankr.W.D.N.Y.2000).

Conversely, the Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property." 11 U.S.C. § 101(32)(A) (West 2010). The Bankruptcy Code definition of insolvency is commonly referred to as "balance-sheet insolvency" and requires a party to show that the company's liabilities exceeded its assets. The difference between the two standards has been described as follows:

> The equity test of insolvency equates insolvency with a lack of liquid funds, or the inability to pay one's debts in the ordinary course of business as the debts mature. This test normally has the lower threshold of compliance; it may be met by companies in temporary financial difficulty which are not on the verge of failure. The bankruptcy test of insolvency, on the other hand, focuses on the balance sheet of a company at discreet intervals of time in order to determine whether the company's liabilities exceed

its assets; it will typically be met by companies in serious financial difficulty.

*U.S. v. 58th St. Plaza Theatre, Inc.,* 287 F.Supp. 475, 500 (S.D.N.Y.1968). Furthermore, the requisite proof of insolvency is different under these two standards. *See, e.g., Brown Packing Co. v. Lewis,* 185 Misc. 445, 449, 58 N.Y.S.2d 443, 448 (N.Y.Sup.Ct.1943) ("Insolvency under the statute does not mean excess of liabilities over assets. It means inability to pay debts in the ordinary course of business."); *In re Mobilift Equipment of Fla., Inc.,* 415 F.2d 841, 843 (5th Cir.1969) (same). The Estate asserts that Judge Eisenberg failed to apply the equitable insolvency standard required under BCL § 513 because the court "dedicated just a brief paragraph to whether the Debtor was able to pay its debts as they came due in the ordinary course of business" as opposed to the more lengthy discussion of whether the Debtor's liabilities exceeded its assets. (Arbore Br. ¶¶ 60 & 61.)

■ The relevant issue of law is whether the Bankruptcy Court correctly interpreted the statutory definition of "insolvency" as defined in BCL § 513. Questions of statutory interpretation are considered questions of law. *In re Enron Creditors Recovery Corp.,* No. 01–16034, 2009 WL 3349471, at *6 (S.D.N.Y. Oct.16, 2009) ("And because matters of statutory interpretation present questions of law, not of fact, the resolution of factual questions identified by Judge Gonzalez will be obviated if he erred in his interpretation of the statute."). Although there are claims in the adversary proceeding unrelated to the question of insolvency, the insolvency determination is relevant to the primary issue in the litigation, and therefore would materially affect the outcome of the adversary proceeding. Thus, whether the Bankruptcy Court correctly

interpreted the statute can properly be considered a controlling issue of law.

■■■■ However, the existence of a controlling issue of law alone is not a sufficient ground to grant leave to file an interlocutory appeal. A court should only grant leave to file an interlocutory appeal where "the case law shows there to be a substantial ground for difference of opinion with respect to the controlling question." *In re Pappas*, 207 B.R. 379, 381 (2d Cir. BAP 1997). Where the controlling issue of law is a matter of statutory interpretation, an interlocutory appeal is inappropriate where a party does not claim that the bankruptcy court "employed the wrong legal standard" in making a determination, but rather "contend[s] that the court erred in applying that standard" because "[m]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *In re Cross Media Marketing Corp.*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept.19, 2007); *In re Enron Corp.*, Nos. M–47, 01–6034, Adv. 03–92677, 03–92682, 2008 WL 281972, at *5 (S.D.N.Y. Jan.25, 2008) ("The statutory interpretation of a provision of the Bankruptcy Code is a matter well within the expertise of the bankruptcy court to decide. Although there may be disagreement among courts as to the proper method of statutory interpretation to employ in construing § 741(8), defendants have failed to show that there is a substantial ground for difference of opinion as to the bankruptcy court's interpretation in the context of this case. Merely claiming that the court's interpretation was incorrect is insufficient to establish substantial grounds for difference of opinion.").

■■■■ Thus, the operative question is whether the Estate is arguing Judge Eisenberg employed the wrong legal standard or misapplied the correct legal standard by taking into account evidence of balance-sheet insolvency when determining whether the Debtor was equitably insolvent under BCL § 513. As noted above, Judge Eisenberg did not solely rely on the evidence of balance-sheet insolvency in finding that the Trustee proved equitable insolvency. Thus, the Court finds that the issue raised by the Estate is with the application of the equitable insolvency standard, and therefore not proper for interlocutory review.

In the September 30, 2010 Bankruptcy Order, Judge Eisenberg discussed the evidence regarding balance-sheet insolvency in detail and then held:

> In addition, a review of the other proofs of claim filed in this bankruptcy case shows that many of the claims against the Debtor arose in 2004 and 2005. The Debtor's inability to pay its ongoing sales tax liability and other debts from July 1, 2003 to the Petition Date is clear and undisputed evidence of the Debtor's inability to pay its debts as they became due in the usual course of business during this period. Accordingly, the Court finds that the Trustee has proven by a preponderance of the evidence that the Debtor was insolvent from July 1, 2003 to the Petition Date under N.Y. BUS. CORP. LAW § 513(a).

*In re Poseidon Pool & Spa Recreational, Inc.*, 2010 WL 3895495, at *8 (Bankr. E.D.N.Y.2010). The Estate claims that because the majority of the opinion is dedicated to the Trustee's accountant's determination of when the Debtor was balance-sheet insolvent, Judge Eisenberg did not actually apply the required equitable insolvency standard. In support of this claim, the Estate cites to the fact that the September 30, 2010 Bankruptcy Order does not reference any specific debts that the Debtor was unable to pay in the ordinary course of business.

However, the law does not require that the bankruptcy court identify the specific debts that the Debtor was unable to pay, nor does it limit the type of evidence available for a court to consider. Furthermore, there does not appear to be substantial ground for a difference of opinion as to whether a court can consider evidence of balance-sheet insolvency when making a finding of equitable insolvency. *See Vowteras v. Argo Compressor Service Corp.*, 83 A.D.2d 834, 836, 441 N.Y.S.2d 562, 564 (2d Dep't 1981) ("The existence of working capital (current assets less current liabilities) could indicate that the corporation is equitably solvent"); *In re Mobilift Equipment of Fla., Inc.*, 415 F.2d 841, 843 (5th Cir.1969) (noting that the standards for proving insolvency were not the same, but taking into account the fact that a corporations liabilities exceeded its assets when finding that they were unable to pay debts in the ordinary course of business); *cf. In re Industrial Ceramics, Inc.*, 253 B.R. 323 (Bankr.W.D.N.Y.2000) (noting that evidence of equitable insolvency was not alone sufficient to establish balance-sheet insolvency absent expert testimony). In sum, whether, as a matter of factual inquiry a court should place more weight on evidence of a debtor's inability to satisfy particular debts as opposed to evidence of balance-sheet insolvency is a factual inquiry not properly addressed on interlocutory appeal.

### III. CONCLUSION

For the above stated reasons, it is hereby

**ORDERED,** that the Estate's request for leave to file an interlocutory appeal from the September 30, 2010 Bankruptcy Order is denied.