**In re 717 GRAND STREET CORP., Debtor.**

No. 100–17951–608.

United States Bankruptcy Court, E.D. New York.

Oct. 13, 2000.

O'Rourke & Degen, New York City, Sankel Skurman & McCartin, New York City, for creditor.

Penn & Proefriedt, New York City, for debtor.

## MEMORANDUM DECISION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of Dunkin' Donuts Incorporated ("Dunkin' Donuts"), Baskin–Robbins U.S.A. Co. ("Baskin–Robbins"), and Third Dunkin' Donuts Realty, Inc. ("Realty") for relief from the automatic stay. For the reasons stated herein, the motion is granted to the extent set forth below.

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(G) and the Eastern District of New York standing order of reference dated August 28, 1986. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bank. P. 7052. The facts set forth herein are not in dispute except as otherwise indicated.

### Factual Background

The five affiliated debtors are four affiliated entities, Shahbaz, Inc., Graham Shabaz, Inc., 717 Grand Street Corp., and Mercy–Broadway Corp., and the individual principal of those entities, A. Rahim Khawaja. Each of the debtors entered into separate franchise agreements, as franchisees, with both Dunkin' Donuts and Baskin–Robbins, as franchisors, providing for the operation by the debtors of a combination Baskin–Robbins/Dunkin' Donuts store at four separate locations in Brooklyn. (Although there are five debtors, there are four stores, and a total of eight franchise agreements, because individual debtor Khawaja is a cosignatory with debtor Graham Shabaz, Inc. on the franchises for the store located at 13 Graham Avenue, Brooklyn, New York.) Debtor Shabaz, Inc. is also the lessee, by assignment, under a lease originally dated October 1, 1982, now held by Realty, as lessor, covering the premises at which Shabaz, Inc. operates as franchisee. The eight franchise agreements will be collectively referred to as the "Franchise Agreements."

These five cases were commenced by the filing of voluntary petitions under chapter 11 of the Bankruptcy Code on July 24, 2000. Pre-petition, each of the debtors entered into a settlement agreement with Dunkin' Donuts, Baskin–Robbins and Realty, dated April 9, 1999 (the "Settlement Agreement") in which the debtors acknowledged that the Lease and the Franchise Agreements had terminated, and were being temporarily reinstated for the purpose of permitting the franchisees to attempt to sell the franchises. The Settlement Agreement provided for certain payments by the debtors to the moving parties, and provided for the Franchise Agreements and the Lease to be terminated by the moving parties if those payments were not made. The debtors do not dispute that, prior to the execution of the Settlement Agreement, they were in default under the Franchise Agreements and the Lease.

### Termination of the Franchise Agreements

Dunkin' Donuts contends that, almost immediately after the Settlement Agreement was signed, debtors defaulted, and on or about May 14, 1999 Dunkin' Donuts sent each of the debtors a Notice to Cure, pursuant to the terms of the Settlement Agreement and the Dunkin' Donuts Franchise Agreements. The debtors have not disputed that they were in default at that time under the Settlement Agreement and the Franchise Agreements referenced in the Notices to Cure, and have not disputed that they received the Notices to Cure. The Notices to Cure were followed by Notices of Termination, dated on or about June 9, 1999 (well after the expiration of the 7 day cure period re-

quired in Section 9.B.2 of the Dunkin' Donuts Franchise Agreements), addressed to each of the debtors, which stated that the Dunkin' Donuts Franchise Agreements were terminated. Again, the debtors have not contended that the defaults were cured, or that the Notices of Termination were improperly sent or that they were not received.

Movants contend that the Baskin–Robbins Franchise Agreements were also terminated pre-petition, for several reasons. First, they argue that the Baskin–Robbins Franchise Agreements terminated automatically upon the termination of the Dunkin' Donuts Franchise Agreements, pursuant to the provisions of Section 16.3.16 of the Baskin–Robbins Franchise Agreements. This Court does not agree. While Section 16.3 of the Baskin–Robbins Franchise Agreements gives Baskin–Robbins the right to terminate upon the occurrence of the events enumerated thereunder (including the termination of the Dunkin' Donuts Franchise Agreements), it does not provide that such termination is automatic. Movants also point out, however, that Baskin–Robbins sent Notices to Cure dated, variously, June 7 and June 10, 1999, to each of the debtors, except for Mercy Broadway Corp., and followed those Notices to Cure with Notices of Termination dated July 20, 1999 directed to the debtors. The termination notice directed to Mercy Broadway Corp. stated that that debtor's Baskin–Robbins Franchise Agreement was terminated by reason of the termination of the other Franchise Agreements. Again, the debtor has not disputed that these Notices of Termination were properly sent under the terms of the Franchise Agreements.

Finally, a Notice of Termination dated June 16, 2000 was sent to all of the debtors, terminating all of the Franchise Agreements based upon alleged failure to meet quality standards set forth in the Franchise Agreements. Here, too, the debtors have not contended that the standards violations alleged did not occur, or that they were not provided with an opportunity to cure in accordance with the Franchise Agreements, or that the notices were otherwise improperly sent.

■ Based upon the undisputed facts presented by the movants, it is clear that the Franchise Agreements were terminated by Dunkin' Donuts and Baskin–Robbins pre-petition. The June 16, 2000 Notice of Termination also states that the lease is terminated, as follows:

> Additionally, pursuant to paragraph 15(a) of your Lease for the 12th Street Shop, Dunkin' elects to and hereby terminate your Leases.

Paragraph 15(a) of the Lease provides that "[t]he LESSEE warrants that a Franchise Agreement between the LESSEE and DUNKIN' DONUTS OF AMERICA, INC. to operate the DUNKIN' DONUTS SHOP is in full force and effect and that this LEASE is subject to Franchise Agreement remaining in full force and effect. If said Franchise Agreement is terminated for any reason, then the LESSOR shall have the right to terminate this LEASE." It appears, however, that the *purported Lease termination contained in the June 16, 2000 notice was sent by Dunkin' Donuts, rather than Realty, the lessor.* On this record, therefore, this Court is unable to conclude that the Lease was terminated pre-petition.

### Debtors' Arguments

While not contesting the facts alleged in movants' papers concerning the debtors' pre-petition defaults and the sending by Dunkin' Donuts and Baskin–Robbins of Notices to Cure and Notices of Termination, debtors make several arguments why the Franchise Agreements should not be found to have terminated pre-petition. This Court does not find merit in any of these arguments.

First, debtors argue that the Settlement Agreement never became effective, because it was not approved by Dunkin' Donuts Finance Committee as required by

paragraph 8 thereof, and therefore any purported termination of the Franchise Agreements based upon the defaults under the Settlement Agreement is ineffective. This argument fails because all of the various notices described above were sent pursuant to the terms of the Franchise Agreements as well as the Settlement Agreement, and debtors have not disputed that those notices were properly sent, and were effective, pursuant to the terms of the Franchise Agreements.

Second, debtors argue that by sending the June 16, 2000 notice of termination, Dunkin' Donuts acknowledged that the prior terminations were invalid. This argument is refuted by the first paragraph of the June 16, 2000 letter, which expressly states:

> This Notice serves to supplement the Notices of Termination previously sent to you via certified mail. This letter does not supersede the Notices of Termination, nor does it constitute waiver of any rights Dunkin' Donuts Incorporated, Baskin–Robbins USA, Co., or any of their subsidiaries have pursuant to the Notices of Termination.

Moreover, even if the earlier notices of termination should be deemed ineffective (a contention which this Court rejects), debtors offer no reason why the June 16, 2000 notice should not be given effect.

■ Third, the debtors argue that by commencing litigation in state and federal court against debtors seeking injunctive relief and damages, that movants have "demonstrated the validity of the franchise agreements." Affidavit of Rahim A. Khawaja, sworn to September 18, 2000, ¶ 12. This contention is utterly devoid of merit. Action taken by movants in court to enforce their legal rights against debtors cannot be interpreted as a waiver of those rights or an acknowledgment of the validity of the Franchise Agreements.

■ Fourth, the debtors argue that the fact that the debtor has been able to obtain Dunkin' Donuts and Baskin–Rob- bins products, and that movants have in the past indicated a willingness to negotiate, should be construed as a waiver or an acknowledgment that the agreements are in effect. This Court declines to infer a waiver from negotiations, or from the fact that debtors have been able to obtain Dunkin' Donuts and Baskin–Robbins products since the termination. First of all, it is not clear from the record that these products were obtained from Dunkin' Donuts and Baskin Robbins; movants assert by way of reply that Dunkin' Donuts Franchisees obtain products from a cooperative, not from Dunkin' Donuts. In any event, debtors point to no act by movants which could be construed as a waiver of the termination notices, express or implied.

■ Finally, citing *In re Karfakis,* 162 B.R. 719 (Bankr.E.D.Pa.1993), debtors argue that the Lease and the Franchise Agreements are a single, unitary whole, and that because the Lease was not terminated pre-petition, the Franchise Agreements remain in effect. This Court rejects this argument on several grounds. First, as a factual matter, this Court concludes that the Lease is separate from the Franchise Agreements. Although the Lease was assigned to Shabaz, Inc. at the time the Shabaz, Inc. Dunkin' Donuts franchise agreement was entered into, the Lease was originally entered into on October 1, 1982, ten years before any of the Franchise Agreements were signed, between Dunkin' Donuts of New York, Inc. and Eugene S. Penn and Christina S. Penn. Thus, neither of the original parties to the Lease are parties to this contested matter. Moreover, the current lessor under the Lease is not Dunkin' Donuts or Baskin–Robbins, but Realty. There is no evidence in the record as to the corporate relationship between Realty, and either Dunkin' Donuts or Baskin–Robbins. These facts distinguish the Lease from the lease at issue in *Karfakis,* which was entered into contemporaneously with the franchise agreement there at issue, and between the same parties.

Moreover, under the test employed by the *Karfakis* court, the Franchise Agreements and the Lease cannot be construed as a single, indivisible agreement. *Karfakis* described the applicable inquiry as "whether the parties assented to all of the promises as a single whole, so that there would have been no agreement whatever if any set of promises had been struck out." *Id.* at 725. There is nothing in the record to indicate that Dunkin' Donuts and Baskin–Robbins would not have entered into the Franchise Agreements if Shabaz, Inc. had not become the assignee of the Lease; indeed, they entered into the Franchise Agreements with the other debtors for the operation of stores at locations leased from unrelated third-party landlords. Furthermore, the Lease could theoretically have value to debtor Shabaz, Inc. even if the Franchise Agreements are terminated. Notwithstanding the language of the Lease restricting its use to a Dunkin' Donuts shop, Section 365(f) of the Bankruptcy Code leaves open the possibility that debtor Shabaz, Inc. may seek to assume the Lease, if it has value, and assign it to another entity for use for another purpose.[1]

The same conclusion, that the Lease is separate from the Franchise Agreements, follows under the test articulated in *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 233 (2d Cir.1991). There, the Second Circuit held that a contemporaneously executed promissory note and distributor agreement were to be treated as a single contract, reasoning as follows:

> The promissory notes were executed for the sole purpose of making payments under the distribution agreement.... Under New York law, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together. Thus we

conclude that Carvel is not entitled to recovery on the promissory note without reference to the distributorship agreement.

Here, the Lease was originally entered into ten years before any of the Franchise Agreements, and even now is not held by either of the franchisors, but by Realty. Moreover, in *Carvel*, the court emphasized the fact that no separate consideration was given for the notes, and that they were executed for the "sole purpose of payments under the distribution agreement." *Id.* Here, the Lease provides for separate (and not merely nominal) consideration to Realty, in the form of base rent of $4,000 per month and percentage rent equal to 12% of gross sales. *Cf. Pieco, Inc. v. Atlantic Computer Systems, Inc. (In re Atlantic Computer Systems, Inc.)*, 173 B.R. 844, 850 (S.D.N.Y.1994) (in which the court found certain equipment schedules and related equipment leases to be composite agreements because of the absence of separate consideration to the lessor under the leases).

### Movant's Request for Stay Relief

■ Movants seek relief from the automatic stay pursuant to Section 362(d) for lack of adequate protection. They contend that in operating the shops after termination of the Franchise Agreements, debtors are wrongfully using movants' proprietary names and marks. Under Section 362(g) of the Bankruptcy Code, the party opposing a stay relief motion has the burden of proof on all issues other than the issue of the debtor's equity in the property.

Although the debtors contend that the Franchise Agreements have not terminated, they do not dispute that, if the Franchise Agreements have terminated, the debtors are not entitled to use movants'

---

1. The foregoing should not be construed as an extension of any deadline provided in the Bankruptcy Code for the debtor to take such action, nor should it be construed as a ruling that the Lease has not been rejected by operation of law pursuant to Section 365(d)(4) of the Bankruptcy Code.

**6**

proprietary names and marks. The case law cited by movants amply supports their contention that irreparable injury occurs where a former licensee continues to use a trademark without authorization. *E.g., Church of Scientology International v. Elmira Mission of the Church of Scientology,* 794 F.2d 38 (2d Cir.1986). Movants have met their burden of coming forward on this issue, and debtors have not met their burden under Section 362(g) to show that movants are adequately protected. Accordingly, the automatic stay is modified and terminated to permit movants to pursue their remedies under the Franchise Agreements against debtors in state and federal court; provided, however, that no action to collect a money judgment may be taken against any of the debtors.