In re FPSDA I, LLC, et al., Debtors.

Dunkin' Donuts Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC, Baskin–Robbins Franchising LLC, Baskin–Robbins Franchised Shops LLC, and DB Real Estate Assets I LLC, Petitioners,

v.

CDDC Acquisition Company LLC, Middle Country Road Donuts LLC, Mountain Road Donuts LLC, and Benfield Donuts, LLC, Respondents.

No. 11–MC–282 (ADS).

United States District Court, E.D. New York.

March 1, 2012.

O'Rourke & Degen by Ronald D. Degen, Esq., of Counsel, New York, NY, Attorneys for the Petitioners.

Ruskin Moscou Faltischek, P.C. by Michael S. Amato, Esq., of Counsel, Uniondale, NY, Attorneys for the Respondents.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The Petitioners, Dunkin' Donuts Franchising LLC and Dunkin' Donuts Franchised Restaurants LLC (collectively "Dunkin' Donuts" or "Dunkin"), Baskin-Robbins Franchising LLC and Baskin-Robbins Franchised Shops LLC (collectively "Baskin-Robbins"), and DB Real Estate Assets I LLC ("DB Realty"), (collectively, "Dunkin' Brands"), seek leave to file an interlocutory appeal from a decision of the Bankruptcy Court (Dorothy D.T. Eisenberg, J.), granting the Debtors' motion making a determination that the provisions of 11 U.S.C. § 365(d)(4) are inapplicable to the Petitioners' lease agreements with the Debtors. In the alternative, the Petitioners request a finding that the decision is a final order. For the reasons that follow, the Court finds that the bankruptcy decision was not a final order and denies leave to file an interlocutory appeal.

## I. BACKGROUND

The Debtors–Respondents operate franchises of Dunkin' Donuts and/or Baskin-Robbins stores. Six of the stores are in Maryland and six are in New York. Dunkin' Donuts and Baskin Robbins (collectively "Franchisors") are the franchisors of the Debtors' stores. Four of the Debtors, CDDC Acquisition Company, LLC, Middle Country Road Donuts, LLC, Mountain Road Donuts, LLC, and Benfield Donuts, LLC, have a lease agreement with DB Realty (the "Dunkin' Leases"), a subsidiary of Dunkin' Donuts, which was entered into at the same time as, and in conjunction with, their franchise agreement. No one disputes that DB Realty would not have signed the Dunkin' Leases with the Debtors, if the Debtors had not simultaneously signed a franchise agreement with the Franchisors which allowed them to operate a Dunkin' Donuts and/or Baskin-Robbins franchise on the premises.

Moreover, the lease agreements expressly provide that if the franchise agreement is terminated for any reason, the landlord shall have the right to terminate the lease. In addition, the lease agreements provide that the premises may only be used for operation of a Dunkin' Donuts and/or Baskin-Robbins store in accordance with the terms and conditions of the franchise agreements. In sum, the Dunkin' Leases and the franchise agreements are part of a single transaction, and both parties acknowledged this for purposes of the previous motion and order in the Bankruptcy Court that is presently on review.

The Petitioners claim that the debt of the Debtors is significant, including unpaid royalty and advertising fees under the franchise agreements, as well as pre-petition unpaid rent and miscellaneous charges under the lease agreements. Furthermore, according to the Petitioners, the Debtors continue to operate at a loss, and each month the amount of the loss increases as their debts continue to grow.

Section 365(d)(2) of the Bankruptcy Code provides that debtors may have until plan confirmation to determine whether they will assume or reject executory contracts. See 11 U.S.C. § 365(d)(2). However, there is a carve-out in subsection (d)(4) of this statute, in which debtors have only 120 days, or 210 days with the court's permission, to decide whether to assume or reject nonresidential real property leases. Here, the Bankruptcy Court provided the Debtors with the maximum 210 days to determine whether they wanted to assume or reject the Dunkin' Leases. However, when the 210 day time limit was near expiration, the Debtors filed a motion seeking either (1) a determination that the Dunkin' Leases need not be assumed or

rejected within the 210 day period; or (2) authorization to assume the leases without having to cure defaults under the franchise agreements. The rationale underlying their argument was that the lease and franchise agreements are part of a single transaction and thus, both agreements should be subject to the longer time period for assumption or rejection as provided for executory contracts in § 365(d)(2).

In light of the Debtors' position, United States Bankruptcy Judge Dorothy T. Eisenberg extended the time to assume or reject the Dunkin' leases beyond the 210 days, until March 29, 2011, so that she could make a final decision as to the issue. On March 22, 2011, Judge Eisenberg issued a Memorandum Decision and Order addressing the Debtors' contentions. First, she found that each lease and corresponding franchise agreement were "economically interrelated and interdependent" so that they "constituted an integrated transaction and should be treated as a single controlling agreement." *In re FPSDA I, LLC,* 450 B.R. 392, 397 (Bankr. E.D.N.Y.2011). Second, Judge Eisenberg noted that when creditors such as Dunkin' Brands have the dual role of franchisor and landlord, applying the relief stated in § 365(d)(4) would provide the creditor with superior power to determine the course and outcome of the debtor's bankruptcy case then what was intended. Thus, the Bankruptcy Court found that "some additional time for Debtors to determine whether to assume or reject the Dunkin' Brands Leases and franchise agreements is appropriate." *Id.* at 401. Accordingly, the Court held that § 365(d)(4) was inapplicable to the Dunkin' Brands Leases.

The question that is the subject of the requested interlocutory appeal is whether 11 U.S.C. § 365(d)(4) is applicable to a non-residential lease, where that lease and a corresponding executory franchise agreement are part of a single transaction. The Petitioners request a reversal of the Bankruptcy Court's Order and for a directive to the Bankruptcy Court to act in conformity with the holding of this Court.

## II. DISCUSSION

### A. Whether the Order From the Bankruptcy Court is Final

As an initial matter, the Petitioners note that they consider the Bankruptcy Court's March 22, 2011 Order to be final, so that permission to appeal is not needed because it may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr.P. 8001. In support of this contention, the Petitioners state that an order is final if it disposes of "discrete disputes within the larger case." *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir. 1983); *see Shimer v. Fugazy (In re Fugazy Express),* 982 F.2d 769, 776 (2d Cir. 1992) (stating that the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief."). Accordingly, the Petitioners claim that the Bankruptcy Court's decision disposes of the entire issues of: (1) when the Dunkin' Leases must be assumed or rejected; and (2) that whatever decisions the Debtors make with respect to a Dunkin' Lease must be rendered with respect to the corresponding franchise agreement.

The Petitioners mainly rely on cases which have found that a bankruptcy order determining whether an agreement is an executory contract or whether or not it is a lease or other agreement is a final order. *See In re Ravenswood Apartments, Ltd.,* 338 B.R. 307, 309 (6th Cir. BAP 2006). As will be explained in further detail below, part of the Bankruptcy Court's analysis was undoubtedly categorizing the lease agreement as either part of a single overarching executory contract, or rather, an

independent lease that was merely related to a corresponding franchise agreement. However, although this analysis was presumably undertaken, it was only the premise for the significant question of what time period is applicable when interrelated executory and lease agreements are subject to assumption or rejection.

Thus, the conclusion of the Bankruptcy Court now subject to this interlocutory appeal is not the categorization of the lease agreement but the timeline under which the Debtors can make their determination to assume or reject the Dunkin' Leases. The Court agrees with the Respondents that this determination does not completely resolve all issues with respect to the Dunkin' Leases because it merely extended the time to assume or reject the leases. *See In re Calpine Corp.*, 356 B.R. 585, 596 (Bankr.S.D.N.Y.2007) ("The bankruptcy court's Extension Order and denial of the Trustee's request to move for summary judgment in the adversary proceeding are not final orders as they are clearly interlocutory and do not involve a 'final determination' of the controversy").

Accordingly, the Bankruptcy Court's March 17 Order was not a "final order" within the meaning of 28 U.S.C. § 158(a)(1), and the Court will proceed to assess whether an interlocutory appeal is permissible in the instant case.

### B. Legal Standard to Grant an Interlocutory Appeal from a Bankruptcy Court Order

■ "Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." *In re Kassover*, 343 F.3d 91, 94 (2d Cir.2003); *see In re Cutter*, No. 05 Civ. 5527, 2006 WL 2482674, at *3 (E.D.N.Y. Aug. 29, 2006) (stating that, while neither § 158 nor the Bankruptcy Rules "provides guidelines for determining

whether a district court should grant leave to appeal, . . . most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)") (citations omitted). "In determining whether to grant leave to appeal an interlocutory order from the bankruptcy court, the Court will apply the standard set forth in 28 U.S.C. § 1292(b), which is the standard used by the court of appeals to determine whether to entertain interlocutory appeals from the district court." *Traversa v. Educ. Credit Mgmt. Corp.*, 386 B.R. 386, 388 (Bankr. D.Conn.2008).

■ Thus, in deciding whether to grant leave to appeal an interlocutory bankruptcy court order, a district court should consider whether: (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Yerushalmi v. Shibolelth*, 405 B.R. 44 (Bankr. E.D.N.Y.2009). "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). Furthermore, all three requirements set forth in section 1292(b) must be met for a Court to grant leave to appeal. *See N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (Bankr. E.D.N.Y.1997) (denying leave to appeal where there was a controlling issue of law, the determination of which would materially advance the litigation, but the moving party failed to show substantial grounds for difference of opinion).

### C. Relevant Bankruptcy Law Provisions

As a general matter, the power of a debtor to assume, or keep, reject, or disavow, contracts and leases entered into prior to bankruptcy is set forth in § 365(a) of the Bankruptcy Code. 11 U.S.C. § 365(a). The concept of rejection has its roots in the principle that the debtor may abandon burdensome property. *U.S. v. Dewey Freight Sys.*, 31 F.3d 620, 621 (8th Cir. 1994) ("damage caused by rejection is a prepetition claim, so that it will not burden the reorganizing enterprise"). Other than rejection, debtors may (1) assume a contract or lease by curing defaults, notwithstanding contrary provisions in the lease or contract for termination due to insolvency, or (2) assign a contract or lease, notwithstanding contractual restrictions on assignment. 11 U.S.C. §§ 365(a)(6) and (f). *See also In re U. L. Radio Corp.*, 19 B.R. 537, 543 (S.D.N.Y.1982) (finding that section 365(f) gives the power to the courts to render unenforceable any provision in an agreement which has the sole effect of restricting assignment).

Pursuant to 11 U.S.C. § 365(b), a trustee, or in this case a debtor, may not assume an executory contract or unexpired lease unless at the time of assumption of such contract or lease, the debtor does the following:

(A) cures, or provides adequate assurance that [debtor] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the [debtor] to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph.

11 U.S.C. § 365(b)(1)(A).

Courts have held that where a nonresidential real property lease is part of an integrated arrangement consisting of another executory agreement, such as a franchise agreement, a debtor cannot assume the lease obligation without also curing the defaults under the related executory agreement. *See In re Szenda*, 406 B.R. 574, 582 (Bankr.D.Mass.2009) (finding that the debtor's motion to assume a lease agreement must be denied unless the debtor seeks approval for the assumption of the Subway franchise agreement relating to the leased premises either by motion or a plan); *In re T&H Diner, Inc.*, 108 B.R. 448, 454 (Bankr.D.N.J.1989) (finding the sale of a diner and the lease for the premises upon which the diner operated to be one indivisible transaction and that the debtor's failure to make note payments constituted a default under the lease that would preclude assumption of the lease); *In re East Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193, 199 (Bankr.E.D.N.Y. 1982) (finding that the "lease is part and parcel of one unified transaction whereby the creditor sold its concrete manufacturing business to the debtor" and that in balancing the equities any assumption of the lease would require the debtor to make payments under the note relating to the purchase of the business).

Pursuant to 11 U.S.C. § 365(d)(2), a debtor has until confirmation of a plan of reorganization to decide whether to assume or reject an executory contract such

as a franchise agreement. In contrast, in the case of an independent nonresidential real property lease, the time to assume or reject such a lease is severely limited pursuant to 11 U.S.C. § 365(d)(4). Nonresidential real property leases receive protections under the Bankruptcy Code not afforded to other contracts and leases. Under section 365(d)(4), after the initial 120 days from the entry of an order for relief plus a 90 day extension that can be granted by the court, a debtor must decide whether to assume or reject a nonresidential real property lease or such lease would be deemed rejected unless the landlord consents to a further extension of time.

Pursuant to 11 U.S.C. § 365(d):

(2) In a case under chapter 9, 11, 12 or 13 of this title, the trustee [or debtor] may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee [or debtor] to determine within a specified period of time whether to assume or reject such contract or lease.

* * *

(4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee [or debtor] shall immediately surrender that nonresidential real property to the lessor, if the trustee [or debtor] does not assume or reject the unexpired lease by the earlier of—

(i) the date that is 120 days after the date of the order for relief; or

(ii) the date of the entry of an order confirming a plan.

(B)(i) The court may extend the period determined under subparagraph (A),

prior to the expiration of the 120–day period, for 90 days on the motion of the trustee [or debtor] or lessor for cause.

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365. Thus, Section 365(d)(4) sets forth a firm deadline as to a debtor's time to assume or reject a nonresidential real property lease. "The deadline was originally enacted to address problems caused by extended vacancies or partial operation by a debtor of tenant space located in shopping centers which reduced customer traffic to other nondebtor tenants due to delays in debtors deciding whether to assume or reject the real property leases." *In re FPSDA I, LLC,* 450 B.R. 392, 399 (Bankr.E.D.N.Y.2011) (*citing* 130 Cong. Rec. S8891, S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.Code Cong. & Admin. News 590, 598–99).

**D. As to Whether an Interlocutory Appeal Should Be Granted**

**1. Controlling Question of Law**

■ "To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *N. Fork Bank,* 207 B.R. at 389. A determination that must be made "in equity or good conscience" cannot be characterized as a question of law that could be "decided quickly and cleanly without having to study the record." *Enron Corp. v. Springfield Assocs., L.L.C.* ("*Enron/Springfield*"), No. 01–16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006) (quoting *In re Worldcom,* No.2003 Misc.

47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). However, "where a 'legal' issue is 'essentially fact based in nature' interlocutory appeal is not appropriate." *In re Complete Retreats, LLC,* No. 07 Misc. 152, 2008 WL 220752, at *2 (D.Conn. Jan. 23, 2008) (quoting *Brown v. City of Oneonta, N.Y.,* 858 F.Supp. 340, 349 (N.D.N.Y.1994), *rev'd on other grounds by,* 106 F.3d 1125 (2d Cir.1997)). "A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)." *In re Perry H. Koplik & Sons, Inc.,* 377 B.R. 69, 75 (Bankr.S.D.N.Y.2007).

For example, "though the question of whether to stay a proceeding on the basis of international comity, pending the outcome of another case, is fairly considered a 'legal' question," courts tend to deny leave to file an interlocutory appeal challenging the bankruptcy court's finding because the resolution of the issue "requires a heavily fact-based analysis." *In re Complete Retreats, LLC,* 2008 WL 220752, at *3; *see also In re Lehman Bros. Holdings, Inc.,* 422 B.R. 403, 407 (Bankr.S.D.N.Y.2009) ("This Court cannot review the Bankruptcy Court's determination regarding comity without performing the same careful study of the record, the relationships of the parties and the British action performed by the Bankruptcy Court, and thus cannot conclude that the appeal presents a controlling question of law."); *In re Perry H. Koplik & Sons, Inc.,* 377 B.R. at 74 ("Rather, the instant motion presents a question as to whether the Bankruptcy Court properly evaluated admissible evidence presented in determining that comity should not be granted to the Indonesian legal proceedings.").

■ To determine whether the Dunkin' Leases are governed by Section 365(d)(4)

and consequently whether the debtors are bound by the 120/210 day time limit for assumption or rejection of those leases, the Court need not go through an in-depth evidentiary analysis of the testimony and documentary evidence. Rather, this question appears to present a "pure question of law" that this Court could decide "quickly and cleanly" without an in-depth review of the record. *Enron/Springfield,* 2006 WL 2548592, at *4; *Cf. In re Cross Media Mktg. Corp.,* Nos. 03–13901, 07 Civ. 878, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007) ("Since the issues to be appealed cannot be determined solely by interpreting the plain language of the Plan, but rather require an examination of other pleadings and exhibits, they are not pure legal questions of contract construction appropriate for interlocutory review.").

The Debtors assert that by viewing the entire transaction as "one controlling executory agreement" and determining that the Dunkin' Leases need not be assumed or rejected under Section 365(d)(4), the Bankruptcy Court made a fact-based determination. However, the Court finds that Judge Eisenberg's decision was of a legal nature, in that she was determining what treatment should be given under the Bankruptcy Code to lease agreements that are entirely integrated with corresponding franchise agreements for the purposes of assumption or rejection. Although particular undisputed provisions of the agreements were certainly relevant to this analysis, it was essentially the generic nature of the relationship and arrangement that led to Judge Eisenberg's conclusion. In other words, contrary to the Petitioners' assertions, the specific and unique facts of Dunkin' Brands serving as both franchisor and landlord was not the relevant inquiry, but rather was the factual predicate upon which Judge Eisenberg's determination was based on.

■ In addition, a question of law is only controlling if (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. *N. Fork Bank*, 207 B.R. at 389. The controlling issues of law in the present case, if reversed, would certainly not terminate this action. However, the Court finds that it would materially affect the outcome of the litigation. If the Court were to determine that the Bankruptcy Court's Order was incorrect, it would essentially force the Debtors to immediately determine whether they wished to assume or reject both the lease and franchise agreements, as opposed to any time before the confirmation of a plan, which could have significant consequences.

Therefore, the Court finds that whether the Bankruptcy Court correctly ruled that the Section 365(d)(4) is inapplicable to the Dunkin' Leases can properly be considered a controlling issue of law.

## 2. Substantial Ground For Difference of Opinion

■ However, the existence of a controlling issue of law alone is not a sufficient ground to grant leave to file an interlocutory appeal. A court should only grant leave to file an interlocutory appeal where "the case law shows there to be a substantial ground for difference of opinion with respect to the controlling question." *In re Pappas*, 207 B.R. 379, 381 (2d Cir. BAP 1997). Where the controlling issue of law is a matter of statutory interpretation, an interlocutory appeal is inappropriate where a party does not claim that the bankruptcy court "employed the wrong legal standard" in making a determination, but rather "contend[s] that the court erred in applying that standard" because "[m]erely claiming that the bankruptcy court's decision was incorrect is

insufficient to establish substantial ground for difference of opinion." *In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2; *In re Enron Corp.*, Nos. M–47, 01–6034, Adv. 03–92677, 03–92682, 2008 WL 281972, at *5 (S.D.N.Y. Jan. 25, 2008) ("The statutory interpretation of a provision of the Bankruptcy Code is a matter well within the expertise of the bankruptcy court to decide. Although there may be disagreement among courts as to the proper method of statutory interpretation to employ in construing § 741(8), defendants have failed to show that there is a substantial ground for difference of opinion as to the bankruptcy court's interpretation in the context of this case. Merely claiming that the court's interpretation was incorrect is insufficient to establish substantial grounds for difference of opinion.").

As to the second requirement, the Petitioners contend that there is a substantial ground for difference of opinion as to whether, as a matter of law, Section 365(d)(4) is inapplicable to a nonresidential real property leases when there are corresponding franchise agreements relating to the leased premises. However, before the Court addresses this contention, a few initial considerations must be addressed.

### a. As to the Bankruptcy Court's Initial Determinations

A large portion of Judge Eisenberg's decision was devoted to whether the franchise and lease agreements are integrated, so that a decision to assume or reject either of the contracts must be done simultaneously. The Bankruptcy Court found first, that it was undisputed by the Debtors and Dunkin' Brands that, at least for purposes of the motion, each of the Dunkin' Brands Leases and the corresponding franchise agreements constitute an "integrated arrangement" that was "economically interrelated and interdependent." This was based upon the fact that: (1)

each debtor that was a party to a Dunkin' Brands Lease entered into the lease contemporaneously with a franchise agreement to operate a franchise unit at the leased premises; (2) Dunkin' Brands would not have entered into a lease with the debtor unless the debtor also entered into the franchise agreement; (3) the only permitted use for the leased premises is to operate a Dunkin' Donuts and/or Baskin–Robbins franchise; (4) if a debtor defaults under a Dunkin' Brands Lease, then Dunkin' Brands have the right to terminate the corresponding franchise agreement for such leased premises; and (5) each Dunkin' Brands Lease cannot operate independently of the corresponding franchise agreement and thus, consideration for one agreement supported the other agreement.

Building upon the determination that each Dunkin' Brands Lease and the corresponding franchise agreement relating to the leased premises constituted an integrated transaction, Judge Eisenberg went on to find that the Debtors could not assume a Dunkin' Brands Lease unless they cured not only the defaults under the lease but also any defaults under the respective franchise agreement. *See In re FPSDA I, LLC,* 450 B.R. at 398 ("In essence, should the Debtors wish to assume the Dunkin' Brands Leases, they would also need to assume the related franchise agreements and cure the defaults thereunder. This requirement is consistent with the nature of these economically integrated transactions.").

The basic premise that the leases and corresponding franchise agreements are part of a single transaction does not appear to be disputed by either party. DB Realty maintained in the bankruptcy proceedings that a Dunkin' Lease could not be assumed unless the respective franchise agreement was also assumed. Presently, the Petitioners contend that the two agreements are not severable. (*See* Petitioner Mem. at 4 ("Dunkin' Lease Are Not Severable from Franchise Agreements").) The Respondents appear to accept this contention. They note that in their initial Section 365 motion, they argued before the Bankruptcy Court that it was precisely because the Dunkin' Lease and Franchise Agreements constituted a single transaction, that they should not be forced to forego their rights under 11 U.S.C. § 365(d)(2) with respect to the franchise agreements due to the draconian provisions of 11 U.S.C. § 365(d)(4). Accordingly, because neither side appears to dispute that the agreements are interrelated and that assumption or rejection must be done concurrently, this is not the relevant controlling law the Court need now address but rather the underlying premise for the relevant inquiry.

However, whether there is a substantial ground for difference of opinion with respect to the controlling law is nevertheless complicated by how to frame the issue presented by this requested interlocutory appeal. One may pose the relevant inquiry as what timeline is applicable to a lease agreement when it is related to a corresponding franchise agreement, when the agreements are *not* read together as a single executory contract. If so, there is not a single case that has approached the issue in that fashion, and thus, the question is one of first impression. On the other hand, if the issue is presented as whether the lease and franchise agreements are integrated and thus should be read as one single executory contract, so that the timeline in (d)(4) would presumably not be applicable, then there is in fact a plethora of case law on the subject.

The latter framing of the issue can be put another way—whether the lease agreement is unitary with or severable from the related franchise agreements.

*See Prospero Assocs. v. Burroughs Corp.,* 714 F.2d 1022, 1026 (10th Cir.1983) (noting that whether a contract is unitary or severable is a question of intent to be determined from the language employed by the parties viewed in the light of the circumstances surrounding them at the time they contracted); *accord Christian v. Christian,* 42 N.Y.2d 63, 73, 365 N.E.2d 849, 856, 396 N.Y.S.2d 817, 824 (1977) (citing 5 Williston on Contracts, § 767, at 629 (3d. ed. 1961)); *First Savings & Loan Ass'n. v. Am. Home Assurance Co.,* 35 A.D.2d 344, 316 N.Y.S.2d 233, 235 (1st Dep't 1970), aff'd, 29 N.Y.2d 297, 277 N.E.2d 638, 327 N.Y.S.2d 609 (1971).

It is not entirely clear from the parties' submission what the appropriate lens is through which to address the Bankruptcy Court's Order. The Petitioners at times appear to be under the impression that only the latter inquiry is relevant. (See Petitioner Mem. at 12 ("In the present case, the Bankruptcy Court determined that the Dunkin' Lease are executory contracts, rather than nonresidential leases, for purposes of 11 U.S.C. § 365(d)(4)").) Nevertheless, under either inquiry, the present interlocutory appeal does not satisfy the requirement that there be a substantial ground for difference of opinion with respect to the controlling law. The Court will address each framing of the controlling law in turn.

**b. As to Whether (d)(4) is Applicable if the Leases and Franchise Agreements Form a Single Executory Contract**

First, assuming that the Dunkin' Brands Leases and the corresponding franchise agreements constitute a single integrated transaction, so that one could not be assumed or rejected without the other, the next possible inquiry is whether the two contracts should be considered as a single controlling executory contract. The par-

ties do not appear to address this issue in their memoranda of law. However, the Bankruptcy Order appears to expressly base its determination on that finding. In addition, the case exclusively relied upon by the Bankruptcy Court, *In re Harrison,* also based its conclusion upon this finding—it held that the time period in (d)(4) was not applicable specifically because it found that the group of dealer agreements, motor fuel station leases, auto care agreements, and auto care limited warranties between a franchiser and the debtor-franchisee were integrated, and collectively formed *one controlling executory agreement* among the parties. 117 B.R. 570, 571 (Bankr.C.D.Cal.1990) ("The Motor Fuel Station leases were each executed contemporaneously with the respective dealer agreements and other related writings and those writings combined control the franchise relationship between Shell Oil and the debtor; therefore there is one agreement for each of the Shell Oil Franchises which pursuant to 11 U.S.C. § 365 are executory contracts."). Thus, Judge Eisenberg also implicitly found that (d)(4) was inapplicable because everything was, in essence, part of a single overarching executory contract.

Assuming that this is the controlling law at issue, the Court finds that there is no substantial ground for difference of opinion as to whether here, the Dunkin' Leases and the franchise agreements may be considered pieces of a single executory contract under the rule of indivisibility. In determining whether separate instruments should be integrated, courts use the same fact-intensive tests that are used to determine severability, such as (1) the differing nature and purpose of the agreements; (2) the separate and distinct consideration for the agreements; and (3) the interrelatedness of the obligations of the parties to the document. *In re Plum Run Serv. Corp.,*

159 B.R. 496, 499 (Bankr.S.D.Ohio 1993); *see also In re Atl. Computer Sys., Inc.,* 173 B.R. 844, 854 (Bankr.S.D.N.Y.1994) (determining whether several instruments formed one indivisible agreement by examining "(1) whether the nature and purpose of the agreements are different; (2) whether the consideration for each agreement is separate and distinct; and (3) whether the obligations of each party to the instruments are interrelated.").

While the nature of the lease and franchise agreements may be characterized differently, the purpose of both was to effectuate the franchising relationship. In addition, consideration for one agreement supported the other. More importantly, the interrelatedness of the obligations of the parties to the documents is apparent. As set forth above, the agreements were entered into contemporaneously; one would not have been entered into without the other; the only permitted use for the leased premises was to operate the franchise; if a debtor defaulted under the lease, then the franchise agreement could also be terminated; and a lease could not operate independently of the corresponding franchise agreement. In light of these factors, the Petitioners have not raised any reasons as to why the instruments should not be integrated and hence to constitute a single executory contract.

In addition, a number of courts in analogous circumstances have found a lease agreement to be part of a single controlling executory contract because of the nature of the integrated business transaction. *See Dunkin' Donuts Inc. v. Liu,* 79 Fed. Appx. 543, 547 (3d Cir.2003) ("The cases on which the Lius rely only suggest that a lease and a franchise agreement may be read as a single indivisible agreement under bankruptcy statutes governing the assumption of executory statutes") (citing *In re Karfakis* 162 B.R. 719, 725 (Bankr.

E.D.Pa.1993)); In re *Karfakis,* 162 B.R. at 725 ("The Court is persuaded by this body of law which suggests that two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties. Hence, the court believes it is necessary to determine whether the Debtor's Franchise Agreement and lease with Dunkin' Donuts are indivisible.... The court is persuaded by these facts that the parties intended the two separate contracts, the Lease and Franchise Agreement, to constitute a single, contractual agreement."); *In re Braniff, Inc.,* 118 B.R. 819, 844–845 (Bankr. M.D.Fla.1989) (finding lease agreement, partial assignment agreement, and purchase agreement documents involving twenty-six aircraft all formed one unified contract); *In re Café Partners/Washington 1983,* 90 B.R. 1, 7 (Bankr.D.D.C.1988) (treating lease and two tenant improvement loans from landlord as a single executory contract because use of premises was conditioned on repayment of loans).

Coincidentally, the only case in this district that has reached the opposite conclusion was in connection with Dunkin' Donuts and Baskin–Robbins, and found that the lease and franchise agreements did not form a single, unitary whole so that if the lease was not terminated pre-petition, then the franchise agreement would still be in effect. *See In re 717 Grand Street Corp.,* 259 B.R. 1, 5 (Bankr.E.D.N.Y.2000). However, that bankruptcy court expressly based this finding on several grounds that are contrary to those present in this case. For example, the 717 bankruptcy court concluded that the lease was separate from the franchise agreements because the lease was originally entered into ten years before any of the franchise agreements were signed. Here, the agreements were executed contemporaneously. As another example, the 717 bankruptcy court found that the current lessor was not Dunkin'

Donuts or Baskin–Robbins but a separate entity, where there was in fact no corporate relationship. As mentioned above, that is not the circumstance here. The bankruptcy court there even noted that "[t]hese facts distinguish the Lease from the lease at issue in Karfakis, which was entered into contemporaneously with the franchise agreement there at issue, and between the same parties." *Id.* at 4.

The Petitioners assert that the Bankruptcy Court rejected the holdings of every published opinion, except one, on the issue, but does not explain which cases it is disputing; why rejecting those cases was wrong; or points out any other cases that the Court should have presumably followed. For instance, the Petitioners appear to rely on *In re East Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193 (Bankr. E.D.N.Y.1982), which was prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments. However, the issue in that case was whether the lease could be assumed independent of the note obligation, not the actual timing that should be applied for assumption or rejection. In fact, the *East Hampton* court found that a "debtor/lessee in a Chapter 11 proceeding is to be afforded a reasonable time period extending no later than the date of confirmation, to either assume or reject a lease." *Id.* at 197. Thus, this case is only relevant to the Court's preliminary discussion, which is not actually the controlling law at issue in the present case. The Petitioners cite several cases in this regard, but seem to misconstrue the issue at hand. The parties do not dispute that the agreements should be assumed or rejected contemporaneously. Rather, assuming the agreements should be determined together, the relevant inquiry is the appropriate timing of that decision under the Bankruptcy Code.

In sum, it seems that implicit in the Bankruptcy Court's Order was the finding that because the two agreements are so interrelated, they form a single overarching executory contract and it was for that reason that the rules governing executory contracts under (d)(2) are applicable. *See In re FPSDA I, LLC*, 450 B.R. at 397 ("Accordingly, each Dunkin' Brands Lease and the corresponding franchise agreement relating to the leased premises constituted an integrated transaction and should be treated as a single controlling agreement.") Indeed, Judge Eisenberg stated at the conference on March 3, 2011, that "you can quote me as saying at this moment it's an executory contract ..." (Tr. at 53.) Contrary to the Petitioners' assertion, there is not a single case revealed by this Court that has found (d)(4) to be applicable to the lease under such circumstances. Thus, the Court finds that there is not a substantial ground for difference of opinion as to whether here, the Dunkin' Leases and the franchise agreements may be considered pieces of a single executory contract based upon the relevant analysis and case precedent.

**c. As to Whether (d)(4) is Applicable if the Leases and Franchise Agreements Do Not Form a Single Executory Contract**

Even if the Court were to find that there was not a single controlling executory contract, but simply two agreements that were interrelated, there would still not be a substantial ground for difference of opinion as to whether (d)(4) is applicable to the Dunkin' Leases.

If the controlling issue of law is framed in this manner, then it would appear to be a question of first impression in this circuit. However, that alone is insufficient to satisfy this prerequisite. *See In re Flor*, 79 F.3d 281, 284 (2d Cir.1996) ("we note that the mere presence of a disputed issue

that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."). Rather, "[i]t is the duty of the district judge ... to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Id.* The Court finds that the arguments in opposition to the challenged ruling here are not strong enough to warrant an interlocutory appeal. The arguments posed by the Petitioners to contend that the lease at issue should be treated as any other ordinary lease agreement are weak and insufficient to demonstrate a substantial ground for dispute.

First, this would not be a traditional lease in the sense that Dunkin' Donuts is not a traditional landlord. Sections 365(d)(3) and (4) apply only to "true" or "bona fide" leases. *Liona Corp., N.V. v. PCH Assocs. (In re PCH Assocs.)*, 804 F.2d 193, 198 (2d Cir.1986). However, Dunkin' is a franchisor that owns and leases certain premises for the sole purpose of advancing its franchise business. Dunkin' Donuts is in the business of franchising and thus its leasing is only a tool to accomplish and further the goals of that business. *See Principe v. McDonald's Corp.*, 631 F.2d 303, 309 (4th Cir.1980), cert. denied, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981) (holding that McDonald's franchisees could be required to operate only on premises leased to them by the parent company and this was not an illegal tying arrangement, because "the challenged aggregation is an essential ingredient of the franchised system's formula for success," making the franchise and the premises lease "a single product."). Thus, the operative document is reasonably not considered a true lease to warrant applicability of (d)(4), in light of the nature of this arrangement.

Second, the rationale thoroughly explained by the Bankruptcy Court is compelling, and there does not appear to be a substantial ground for difference of opinion as to this reasoning. Proceeding upon the assumption that the leases and franchise agreements must be decided at one time, if the shorter time period of (d)(4) was applicable to both, then it would essentially force debtors to prematurely decide whether to assume or reject the executory franchise agreements. However, the timing as to leases is an anomaly, and the rationale for its short duration should not compel the same result as to executory franchise agreements. The Court agrees with the Respondents that forcing the Debtors to assume or reject the executory franchise agreements within 210 days "would improperly expand the scope of [ (d)(4) ]". (Resp. Mem. at 18.)

Moreover, the relatively fast-paced timing to assume or reject non-residential lease agreements, made extremely inflexible with the 2005 BAPCPA amendments, has been fairly criticized, even when applied to undisputedly pure lease agreements. *See generally* Symposium, *Great Debates Resolved: Congress Should Eliminate the Special BAPCPA Protections for Lessors and Providers of Goods,* April 29, 2010 Am. Bankr.Inst. 15 ("Perhaps the most widely criticized provision of BAPCPA was its amendment to section 365(d)(4) of the Bankruptcy Code .... the pendulum has now swung so far in the other direction that even landlords are reeling under the impact of revised section 365(d)(4). While the shortened assumption period has certainly provided landlords with greater clarity on the future of their leases, it has, more importantly, significantly diminished the likelihood that the future of those leases will involve the debtor. As the likelihood of a debtor's reorganization dwindles, so too does the

landlord's prospects of having its leases assumed, cured and continuously occupied."); *see also* Robert J. Keach & Albert Togut, *Commission to Explore Overhauling Chapter 11,* Am. Bankr.Inst. J., June 2011 ("The 2009 symposium panelists generally agreed that some parts of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), such as the shortened time to assume or reject leases and the creation of new administrative claims, went too far and hindered restructurings"); Faye B. Feinstein & Maria Aprile Sawczuk, *Landlords Flex Muscle in Ongoing Tug–of–War Leases BAPCPA Imposes "Statute of Limitations" on Assumption, Rejection,* J. Corp. Renewal, Feb. 1, 2007, available at http://www.turnaround.org/publications/articles.aspx?objectID=7158 ("Under the amended Bankruptcy Code, landlords presumably are given considerable leverage, especially in complicated retail cases. The code allows for additional extensions beyond the initial 210 days if a request is accompanied by written consent of the landlord. The requirement strengthens a landlord's position at the bargaining table."); Lawrence C. Gottlieb, *The Disappearance of Retail Reorganization in the Post–BAPCPA Era,* Sept. 26, 2008, available at http://judiciary.house.gov/hearings/pdf/Gottlieb080926.pdf (noting that in retail cases filed since the BAPCPA amendments, debtors are "often are given a window of no more than three to four months to complete a reorganization process that history dictates takes at least three times that amount of time to accomplish. The most compelling explanation for this development is that both retailers and their lenders are acutely aware that even a full seven months in the life of a retail debtor is not a long time, as most retailers and their lenders cannot judge the vitality of the business without going through at least one Christmas season. Absent the ability to extend the assumption/rejection period beyond the 210–day limit, a debtor will often be forced into the impossible position of having to prematurely determine whether to assume or reject its commercial leases—decisions of critical importance to the ultimate success of any reorganization.").

Most importantly, the Petitioners cannot cite to a single case in which a franchise agreement and accompanying lease agreement were subject to different timelines under 365(d), even when not viewed as one integrated controlling document. As the Respondents point out, the submission of conflicting case law is important in persuading the Court that there exists substantial doubt about the law. *See Genentech, Inc. v. Novo Nordisk A/S,* 907 F.Supp. 97, 100 (S.D.N.Y.1995) ("Novo has not cited conflicting legal authority to persuade the court that there exists substantial doubt about the law."); *Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping,* 752 F.Supp. 173, 175 (S.D.N.Y.1990) ("On the issue of precedential value, plaintiff has made no showing that there are other cases in this Circuit involving the same issue. Rather, it appears to this court that the issue is somewhat unique.").

Therefore, whether or not the lease and franchise agreements are viewed as a single controlling executory contract, there is not a substantial ground for difference of opinion as to whether (d)(4) is applicable in the instant case. While the issue of this provision's applicability is a controlling issue of law, the motion for an interlocutory appeal is denied because this is not an issue about which there is a substantial ground for disagreement. Accordingly, the Court need not address issues of judicial economy—whether an immediate appeal on that issue could materially advance the ultimate termination of this litigation. *See In re S. African Apartheid Litig.,* Nos.

02 MDL 1499 et al., 2009 WL 5177981, at *2 (S.D.N.Y. Dec. 31, 2009).

### 3. Exceptional Circumstances

Finally, in the Court's view, exceptional circumstances that would justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment do not exist in this case. *See e.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978). The appeal in this case was precipitated by the Bankruptcy Court's finding that Section 365(d)(4) was inapplicable to the Dunkin' Leases. The Petitioners' alleged "exceptional circumstance" is the "uncertainty in which the Order leaves all the parties." At another point, the Petitioners claim that "chaos could result" if the Order is not reviewed until the conclusion of the cases, because an assumption of the Dunkin' Leases might have to be undone. The Court finds these arguments to be unpersuasive. If the Court allowed such an appeal at this time based on the argument that a potential assumption or rejection could be subsequently overturned on appeal, or simply because there is "uncertainty", interlocutory appeals would become commonplace in the federal courts. In the Court's view, the Petitioners have not made a showing that the issues involved in the appeal constitute "exceptional circumstances" that warrant an interlocutory review.

### E. Collateral Order Doctrine

■ In addition to the arguments set forth above, the Petitioners assert that even if the Bankruptcy Court's Order is not a final order, it may be appealable under the collateral order doctrine. This doctrine is "a judicially created exception [that] allows immediate appeal from orders that are collateral to the merits of the litigation and cannot be adequately re-viewed after final judgment." *Germain v. Connecticut Nat'l Bank,* 930 F.2d 1038, 1039–40 (2d Cir.1991). However, this is a narrow exception that "is in derogation of the federal policy against piecemeal appeals and hence is confined within strict limits." *Id.* at 1040. Its reach is "limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430–31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (internal quotation marks and citations omitted).

■ In order to be final under the collateral order doctrine, a bankruptcy order "must (1) conclusively determine a disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment," *Kennedy & Assocs., Inc. v. WorldCom, Inc. (In re WorldCom),* No. 08 Civ. 10354, 2009 WL 2215296, at *2 (S.D.N.Y. July 23, 2009) (citing *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)).

■ The Petitioners fail to demonstrate that the Bankruptcy Court's Order will be unreviewable on appeal or that their rights will be irretrievably lost if this Court does not permit an interlocutory appeal. Although this case does involve the delivery of physical property, the lessors' ultimate ability to receive this property is not affected in any way so as to make their rights irretrievably lost. Rather, it was only determined that the Petitioners will need to wait a longer period of time before a decision by the Debtors is made as to whether the lease is assumed or rejected and consequently whether the Petitioners will receive the physical property. Thus, the Petitioners' arguments for applicability of this doctrine is without merit.

## III. CONCLUSION

The Second Circuit has repeatedly emphasized that interlocutory bankruptcy appeals should only be granted in exceptional cases where early appellate review might avoid protracted and expensive litigation. Thus, it was not intended "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation" or to be a "vehicle to provide early review of difficult cases." The issues posed by the Petitioners are by no means clear-cut. As one Court has Bankruptcy Court has noted:

> There appears to be no end in the litigation arising out of 11 U.S.C. § 365(d)(4). Time after time bankruptcy practitioners and debtors-in-possession have tested the equitable powers of the bankruptcy court by failing to follow the requirements of this section. Since the addition of this section in the Bankruptcy Amendments and Federal Judgeship Act of 1984, courts have struggled to find solutions where infractions of the statutory requirements are weighed against the importance of leaseholds to debtors' reorganizations.

*Matter of Lew Mark Cleaners Corp.,* 86 B.R. 331, 332 (Bankr.E.D.N.Y.1988).

The Court finds that the determination by Judge Eisenberg does not constitute the appropriate circumstances for an interlocutory appeal in that it does not demonstrate the exceptional circumstances needed to overcome the general aversion to piecemeal litigation. *See In re AroChem Corp.,* 176 F.3d 610, 619 (2d Cir.1999).

For the above stated reasons, it is hereby

**ORDERED,** that the March 22, 2011 Bankruptcy Order is not a "final order" that may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1); **and it is further**

**ORDERED,** that the Petitioners' request for leave to file an interlocutory appeal from the March 22, 2011 Bankruptcy Order is denied.